Craig v. Craig.

---

No. 23,069.

SARAH E. CRAIG, *Appellee*, v. S. J. CRAIG, *Appellant*.

SYLLABUS BY THE COURT.

1. JUDGMENT OF THIS COURT PROCURED BY FRAUD—*May be Set Aside.* The supreme court has both inherent and statutory power to prescribe a rule of procedure whereby an order of the supreme court reversing a judgment which was procured by the fraud of a litigant may be set aside and corrected.

2. JUDGMENT OF REVERSAL—*Procured by Fraud of Appellant—Motion to Set Aside—Procedure to Bring Appellant into Court.* The filing of a motion to set aside an order of the supreme court reversing a judgment procured by the fraud of an appellant, a copy of which motion was personally served upon him, and due notice given him of the time set for the hearing of such motion, is a proper and sufficient procedure to bring the appellant into court and to challenge the attention of the court thereto.

3. SAME—*Motion to Set Aside Judgment—A Direct Attack Upon Such Judgment.* A motion to set aside an order of the supreme court reversing a judgment, on a sufficient showing that the order was procured by the fraud of the .appellant, is a direct attack upon the order of reversal.

4. SAME—*Devisees Named in Will of Deceased Appellee—Proper Parties to Attack an Order of Reversal Procured by Appellant's Fraud.* Devisees under an appellee's will, and the successors to her estate, and her executor, may properly present a motion ·in the supreme court calling its attention to alleged fraudulent conduct of the appellant, whereby the court was induced to order a reversal of the judgment of the trial court.

5. DIVORCE,—*Decree—Appeal—Death of Appellee—Action for Divorce Abated—Rights of Property Not Determined.* The death of a party to an action for a divorce, pending its appeal, abates the action or appeal so far as it affects the marital status, but it does not necessarily abate the action or appeal so far as property rights are concerned.

6. DIVORCE — *Appeal — Death of Appellee — Order of Reversal Procured by Fraud of Appellant—Parties to Motion to Set Aside Order of Reversal.* Where a motion to set aside an order reversing a judgment alleged the following facts: That appellee obtained a judgment for divorce and· for all the property she owned at the time of her marriage; that appellant brought the cause to the supreme court for review; that abstracts and briefs for both parties were filed and a date set for the hearing of the appeal; that meantime appellee became insane and was residing in a private hospital; that appellant lured her from the hospital and induced her to sign a stipulation that the supreme court should reverse the judgment, and induced her to destroy her will; that appellant filed the stipulation in the supreme court, and an order of reversal was entered pursuant thereto; that shortly thereafter the appellee died,—it is *held,* that the devisees of the destroyed but reëstablished will and the lawful successors to the appellee's property, and her executor, may properly present such motion to set aside the order reversing the judgment; and the facts alleged require that their truth be ascertained.

Appeal from Rawlins district court; CHARLES I. SPARKS, judge pro tem. Opinion filed December 10,.1921. Motion to set aside order of reversal held proper; motion for appointment of commissioner sustained. ·

*W. H. Cowles,* and *J. M. Stark,* both of Topeka, as *amici curiæ* and appearing specially for the appellant.

*C. A. P. Falconer, Earl E. Howard,* both of Atwood, and *W. S. Langmade,* of Oberlin, for the appellee. .

The opinion of the court was delivered by

DAWSON, J.: We have here to consider a motion to set aside an order of reversal of a judgment entered by this court on a stipulation of the parties, which, it is alleged, was procured by the fraud of the appellant.

It appears from the motion and documents filed in its support, and from the files of the case, that Sarah E. Craig, *nee* Morse, a widow, sixty-seven years of age, and having considerable property, married the appellant, S. J. Craig, a man some twelve to twenty years her junior; and that on March 27, 1920, she obtained

a divorce from him in the district court of Rawlins county, on the ground of extreme cruelty. In that decree Mrs. Craig was restored to her former name, Sarah E. Morse, and all property which she owned at the time of her marriage to Craig, some $25,000 worth of real estate and several thousand dollars' worth of government bonds and other personalty, was likewise decreed to her. Craig was given back the property owned by him at the time of his marriage, about $600.

From that judgment Craig filed an appeal in this court.

After the divorce was granted by the district court of Rawlins county, Mrs. Craig made a will devising her property to various persons and naming W. S. Langmade, Esq., of Oberlin, as executor.

Mrs. Craig then made a journey to Kentucky, but returned to Rawlins county in October, 1920, in very poor health and entered a hospital at Atwood. There, according to the recitals of this motion and the showing made in its support, her mental and physical health continued to decline until in December, 1920, she became incapacitated to transact business and incapable of understanding what she did. Her disabilities and infirmities did not improve thereafter.

Meanwhile, the appellant, through his counsel, Dempster Scott and C. E. Scott of Atwood, and E. H. Benson of Colby, had filed an abstract and brief in this court, in Craig's appeal from the judgment of divorce. Counsel for the appellee, W. S. Langmade, and E. E. Howard of Atwood, filed a counter-abstract and a brief in her behalf, and the cause was ready for argument and submission and was set down for hearing in this court on February 11, 1921.

On or about January 20, 1921, the appellant went to the hospital at Atwood, and in the absence of the physician in charge met Mrs. Craig, and persuaded her to go for a drive with him. He carried her to her farm home, and obtained her signature to a stipulation that this court should reverse the judgment of the Rawlins county district court. About the same time he induced Mrs. Craig to destroy her will. The stipulation signed by her and appellant being filed, the order of reversal was entered pursuant thereto as a matter of course on February 11, 1921.

When counsel for appellee were advised of this action by the clerk of this court, they replied:

Craig v. Craig.

"LAW OFFICES OF
## LANGMADE AND HOWARD
ATWOOD, KANSAS.

"*D. A. Valentine, Esq.,*                                            "Feby 17, 1921.
  "*Clerk of the Supreme Court,*
    "*Topeka, Kansas.*
"DEAR SIR:

"In re Craig versus Craig. No. 23,069.

"We are in receipt of card dated Feby., 11th., stating that this case has been reversed as per stipulation. We are quite at a loss to understand what is meant by this. We, as attorneys for appellee, never signed any stipulation, have never seen it and know not what it contains. Messrs., Scott and Son, Attorneys for Appellant, advise us that they know nothing of it.

"Furthermore, it was understood between Attorneys Scott & Son, and ourselves, that the case was to be submitted to the Court on briefs.

"We believe under the circumstances that the Court should vacate its order of reversal as per stipulation until an investigation of this matter may be had, and we will greatly appreciate your soon reply advising us in full as to the manner in which and the basis for the action taken by the Court. . . .

"Very respectfully yours,          LANGMADE AND HOWARD."

Two months later, on April 17, 1921, Mrs. Craig died.

This motion is presented by the parties, a score or more, whose rights of property are affected by the alleged fraud of the appellant. The executor of the will—destroyed through the alleged fraud and undue influence of appellant, but restored and probated on order of the district court—joins in this motion to set aside the order of reversal.

A motion is also on file that this court appoint a commissioner to ascertain the facts touching the alleged fraud narrated in the motion now presented.

Notice of this motion was served upon appellant; and his counsel, appearing specially and as *amici curiæ*, raise several objections to the motion,—that appellant is not in court, that there is no case in court, that the petitioners are not in court, and that the judgment of reversal was voidable only and not void. On the other hand, counsel for the petitioners confine their argument largely to the question:

"Can judgment or order of the supreme court reversing a lower court's ruling be opened or vacated in a divorce case after the death of one party when said judgment or order was obtained in the supreme court by fraud on said court?"

To determine the propriety of this motion to set aside the order of reversal, the court, for the nonce, must assume that the matters

Craig v. Craig.

addressed to our attention are true. Quoting from the allegations of the motion—

". . . neither her physician, relatives or her attorneys were consulted as to taking her from said hospital and that she had not, from the time she was taken to said hospital to the time of her death, any opportunity to be advised by her relatives or attorneys; that at the time she was so taken from said hospital and during all the time from then up to the time of her death she was wholly irresponsible mentally, insane, and had not sufficient capacity to transact any kind of business, was easily influenced by those about her to do whatever they desired her to do; and that during such period, without the knowledge of her relatives or attorneys, she was induced by the said S. J. Craig to sign the paper, a copy of which is hereto attached, made a part hereof and marked exhibit 'B,' which was presented by the attorneys of the said S. J. Craig, to this court as a stipulation or request, to this court for the reversal of said decree of divorce; that the signing of said purported stipulation, or request, was brought about wholly by the undue influence of the said S. J. Craig upon the said Sarah E. Craig in her then incapacitated and weakened condition and was wrongful and fraudulent; that the said paper did not express the wish of the said Sarah E. Craig at any time when she was competent to transact any sort of business and express her true desires and was an imposition upon this court."

If these matters are true, the lapse of a few months' time, or even the lapse of the term at which the order of reversal was fraudulently procured, cannot stay the court's hands to correct them. (*McIntosh v. Comm'rs of Crawford Co.*, 13 Kan. 171.) Happily the practice of fraud on this court has been so rare—indeed the like of this has never occurred—that the legislature has not prescribed any specific code rule to deal with it. The legislature has conferred power upon this court to make any necessary rule to meet such a situation.

"The judges of the supreme court may make and amend, from time to time, such further rules for the regulation of procedure in the supreme court and inferior courts consistent with this code, as they may deem proper." (Civ. Code, § 753.)

But the power of this court to set aside an order which it has been induced to make by the fraud of a litigant is inherent; it does not depend on legislation.

"A judgment obtained by fraud or collusion may be vacated or set aside, courts of record possessing an inherent common-law power in this behalf, which is not dependent upon legislation, although in some states its exercise is specifically regulated by statute. . . . Fraud practiced upon the court is always ground for vacating the judgment, as where the court is deceived or misled as to material circumstances, or its process is abused, resulting in the rendition of a judgment which would not have been given if the whole conduct of the case had been fair." (23 Cyc. 917, 919.)

With entire propriety, so gross an offense against the due administration of justice may be called to our attention by a motion of parties affected by the fraudulent procurement of the judgment of reversal. We shall not at present examine the question under what circumstances and to what extent this court might act upon its own motion.

Here the appellant was personally served with a copy of the petitioners' motion, on September 17, 1921. He was notified that the motion would be called for hearing at the November sitting of court. This procedure was sufficient to bring him into court. The argument that there is no case here, and that the court has lost jurisdiction, entirely overlooks the alleged fraudulent procurement of the order reversing the judgment, through which the appellant got out of court. If the appellant was permitted to depart from this court as a result of his own fraud, the case can and should be reinstated for whatever orders and judgment justice may require.

It is beside the point to say that the order of reversal was only voidable and not void. This motion raises a direct attack upon the order of reversal.

In *People v. Greene*, 74 Cal. 400, 5 A. S. R. 448, it was said:

"A motion to set aside a judgment is a direct, and not a collateral, attack on such judgment; . . .

"It is said a court whose process is abused by an attempt to enforce a void judgment will interfere, for its own dignity, and for the protection of its officers, to arrest further action. (*Mills v. Dickson,* 6 Rich. 487.)

"The most effectual method of doing this is by extirpating the judgment itself—by removing a form which is without substance." (pp. 403, 405.)

(See, also, extensive note to *Furman v. Furman*, 153 N. Y. 309, in 60 A. S. R. 629, 633; 23 Cyc. 917 *et seq.;* Freeman on Judgments, 3d ed., §§ 97-100; 2 Pomeroy's Equity Jurisprudence, 4th ed., 1921.)

It is also urged that the parties to this motion are not in court— that they have no right to interfere. They, as devisees and successors in interest of the property which is affected by the alleged fraud of appellant, have the right to press this motion. Nor can the right of the executor of appellee's will to present this motion be denied. The supreme court in matters analogous hereto follows the procedure prescribed for district courts. (Civ. Code, art. 19, § 421 *et seq.*)

The most important question, however, is the one propounded and contended for by counsel for the petitioners: Can the order for

Craig v. Craig.

reversal of the judgment granting the divorce be set aside after the death of the appellee? There seems to be no lack of authority to the effect that although the death of a party pending an appeal from a judgment in a divorce action abates the action so far as it affects the mere marital status (*Blair v. Blair*, 96 Kan. 757, 760, 761, 153 Pac. 544; *Bunger v. Bunger*, 99 Kan. 22, 160 Pac. 976), it does not necessarily abate the action so far as property rights are concerned. In *Blair v. Blair*, supra, Mr. Justice Burch clearly stated the views of the court on this subject:

"A status is not all there is to matrimony, and dissolution of the status by death does not put an end to all that the marriage relation connoted. Certain property rights flow from the relation. . . . The same protection should be extended to property rights when they are cut off by fraudulent litigation over the status in which such rights originate as when they are cut off by fraudulent litigation over some other subject. The nature of the particular sham hit upon to effect the result is not important. Consequently, while the marital status as such drops out of consideration in this case, there remains the subject of deprivation of property by means of fraud practiced in obtaining a judgment.

"The decisions of courts of other states respecting the subject just discussed are not harmonious. The leading cases are presented in editorial notes found in 57 L. R. A. 583, 1 L. R. A., n.s., 551, and 44 L. R. A., n.s., 505." (p. 761.)

In this case, if the order of reversal was procured by the appellant's fraud, the result is that unless that order is set aside, he, the perpetrator of the fraud and because of it, becomes the statutory heir of Mrs. Craig and succeeds to half her property, thus diminishing by one-half the rights of the score or more of petitioners who are devisees and kinsfolk of the appellee.

In 1 C. J. 208, it is said:

"But where the consequences of the divorce are such as affect the property rights of the parties to the suit, the heirs or personal representatives may have such an interest in the litigation that the cause will survive, not for the purpose of continuing the controversy touching the right of divorce within itself, but for the ascertainment of whether the property has been rightfully diverted from its appropriate channel of devolution.

"It has also been held, as we have seen, [1 C. J. 171] that the right of a party against whom a decree of divorce has been rendered to have the decree reversed on appeal is not defeated by the death of the other party pending the appeal; and that the suit may survive even after the death of both parties.

"An action may be maintained to set aside a decree of divorce fraudulently obtained, even after the death of the party obtaining such decree."

In 1 C. J. 171, it is said:

"Where the party seeking a divorce appeals from a judgment, simply denying it, and pending the appeal either party dies, the appeal and the action abate absolutely and cannot be; revived, there being no one living who can legally have any interest in the same. But it is otherwise in so far as the property rights of the parties are involved. It has also been held that the right of a party against whom a decree of divorce has been rendered to have the same reversed for error is not defeated by the death of the other party pending the appeal. And in Ohio, where a decree of divorce and for alimony was pronounced in favor of the wife, and the husband appealed the cause to the circuit court, and both parties died pending the appeal, it was held that the cause survived in favor of the personal representatives of the deceased plaintiff and against the representatives of the deceased defendant."

(See, also, *Wood v. Wood,* 136 Iowa, 128, 12 L. R. A., n. s., 891; and extended note in 57 L. R. A., 583, 603.)

It is unnecessary to pursue this inquiry further. The motion is properly filed. It alleges matters which may not be ignored. So far as concerns the appellant, the facts alleged in the motion may stand as denied; or he may plead thereto, as he may be advised. The motion for the appointment of a commissioner to take testimony and to consider the evidence presented on the matters alleged in the motion, and to report his findings of fact thereon, is allowed.