MABRY v. BAIRD et al.

No. 33371.   May 16, 1950.

Rehearing Denied June 13, 1950.

*219 P. 2d 234.*

W. K. Garnett and Chas. H. Garnett, both of Oklahoma City, for plaintiff in error.

Everest, McKenzie, Gibbens & Crawford, of Oklahoma City, for defendants in error.

LUTTRELL, J. This is an action for divorce and division of jointly acquired or community property brought by the plaintiff, Manila M. Mabry, against E. K. Mabry. At the close of all the evidence the trial court, on April 7, 1947, rendered judgment granting the plaintiff a divorce and dividing the property between plaintiff and defendant. It did not render judgment for attorneys fees as prayed for in plaintiff's petition, but continued the matter of attorneys fees for a further hearing. The minute entry of the clerk on the trial docket evidencing the rendition of this judgment reads as follows:

"Ent. Comes on for further hearing. Decree to plaintiff & property settlement made all as per J. E. Cont. as to attorneys fees. (Van Meter)"

From the record it appears that the findings of the trial court as to a division of the property between the parties were to some extent specific. The property of the parties which the court undertook to divide comprised interests in oil and gas mining leases, mineral interests, insurance policies having a cash surrender value, corporate stock, bank accounts, household furniture, and office furniture in the defendant's dental office. The trial court, although from the record it appears that a list of all the property involved was in its possession or available to it, did not make a specific division of all the particular properties involved, but after stating what specific property should be set apart to plaintiff as her separate property, and what property should be set apart to defendant as his separate property, and dividing certain items of personal property, stated that the remaining properties were to be divided equally between the parties and left the division thereof to the respective parties and their attorneys, such division to be contained in the journal entry of judgment to be prepared by the attorneys. It appears that the division of the property could not be agreed upon by the parties and their attorneys, and after one or two consultations with the trial judge, the parties were still in disagreement. Thereupon plaintiff, on May 3, 1947, filed in the cause an application stating that the court entered its decree in said cause on April 7, 1947, and made certain findings with reference to the jointly acquired property of the parties; that after the court made said decree the attorneys representing the plaintiff and defendant attempted to make a division of the jointly acquired property in accordance with said decree, but that they had been unable to agree to the satisfaction of their clients as to the decree of the court, and requested the court to clarify and make its decree more specific and certain as to certain items of property. In said application she also called the attention of the court to the fact that there was certain property apparently belonging to the defendant, or standing in his name, which the court in its decree did not dispose of, the same having been overlooked by the parties at the trial of the cause, and prayed the court to set the application down for hearing; permit the plaintiff to offer evidence, and that the court clarify and make more specific its intentions as to the manner in which it intended to make disposition of the properties of plaintiff

and defendant, and also for a decree covering the real and personal properties not mentioned in the petition or answer and not testified about at the time of the trial. Pending the hearing on this application the defendant, on May 7, 1947, departed this life. George L. Baird was appointed administrator of defendant's estate, and upon his application, with the consent of plaintiff, an order of revivor was made making Baird, as administrator, a party defendant on behalf of the deceased defendant.

On May 19, 1947, plaintiff filed in said cause a motion for an order determining that no judgment was ever rendered in the cause, and in the alternative if a judgment had been rendered, for an order vacating the same. In this motion plaintiff alleged that there had been no final announcement of judgment in regard to the property settlement and attorneys' fees, and that the action had been, by the death of defendant, abated as a matter of law; that if the judgment was rendered it should be vacated, since the defendant's death removed the only ground which the court assigned for granting a divorce; that the death of the defendant had precluded any enjoyment on his part of the property accumulated by the parties by their joint efforts during their marriage, and that the judgment should be vacated and plaintiff permitted to take her share of the jointly acquired or community property by inheritance.

Thereafter on May 24, 1947, T. J. Mabry, a brother of E. K. Mabry, and Frank W. Mabry and Earl Mabry, nephews of E. K. Mabry, claiming to be the sole and only heirs at law of E. K. Mabry, filed a motion for revivor, which was granted, and thereupon these parties filed a petition in intervention asserting that judgment had been rendered on April 7, 1947, and requesting the court to deny the motion of plaintiff to vacate the judgment if rendered, or to decree that no judgment had been rendered in the case.

On May 27, 1947, all these motions and applications were set down for further hearing, additional evidence was heard, and on May 27, 1947, the court denied the motion to vacate and held that judgment was rendered on April 7th, and set the matter for June 5, 1947, for final settlement, all as per journal entry. On June 4th the court permitted the plaintiff to file an amendment to her original petition, setting forth that property which in her application to clarify the judgment she had stated was not testified to by the parties or considered by the court when the court rendered its judgment, or purported judgment, on April 7, 1947, and further alleging that while in her original petition she did not specifically allege that defendant was liable to her for her attorneys' fees in the action, but did pray for the allowance of attorneys' fees and costs, she now in the amendment alleged that she was entitled to have and recover from the defendant such reasonable allowance for attorneys fees as the court might fix and determine.

On June 5, 1947, the trial court heard evidence as to the value of the attorneys' services to plaintiff, and additional evidence on the part of plaintiff with reference to certain accounts in the defendant's office, and other property not included in the judgment of April 7th, and rendered a judgment in which for the first time the trial court properly decreed a specific division between parties of all the specific property acquired by them during coverture, which were included in and disposed of by the decree of April 7th. In this judgment the court also undertook to divide the additional properties about which no testimony had been offered, and the disposition of which had not been considered by the court on April 7th, and also fixed the amount of the attorneys' fees to be awarded plaintiff's attorneys out of the estate of defendant. The court found and held that the judgment rendered by it on April 7, 1947, was a final judgment and was intended to dispose of the property rights of the parties, and to grant a

divorce to plaintiff, and made the order or decree of June 5, 1947, an order nunc pro tunc relating back to and attempting to clarify and make certain the division of property made by it on April 7, 1947.

From the record it appears that plaintiff did not file a motion for new trial as to the judgment of April 7th, but did file a motion for new trial from the judgment or order nunc pro tunc of June 5th. The trial court denied the motion for new trial as filed, and plaintiff appeals.

Plaintiff first contends that the pronouncement of the trial court on April 7, 1947, was not a final judgment, for the reason that it left the division of the property not specifically divided by the trial court at that time to be set forth in a formal journal entry of judgment, which the attorneys were instructed to prepare and submit to the court for its approval. They say that this was not a judgment which specified clearly the relief granted to the parties in respect to their property rights, and that if a judgment was, in fact, rendered, the trial court should have specified and divided every item of the jointly acquired or community property of the parties, and should have stated which item, or what share in each item, was awarded to the plaintiff, and what to the defendant. In support of this contention they cite numerous cases such as Carrol v. State, 80 Okla. 89, 194 P. 219; Annis v. Bell, 10 Okla. 647, 64 P. 11, and Wells v. Shriver, 81 Okla. 108, 197 P. 460, holding that a judgment is the final determination of the rights of the parties in an action, and that such judgment must determine the rights of the parties and preclude further inquiry in the issues joined by the pleadings, and leave nothing to be done except to carry it into execution.

The rule announced in these authorities and sustained by many other cases cited and discussed by plaintiff is unquestionably correct, but when we apply that rule to the instant case we believe that the findings and order made by the trial court on April 7th were a sufficient determination of the property rights of plaintiff and defendant.

The findings and judgment of the trial court on April 7th were pronounced orally, and so far as the record shows were not taken down by the court reporter so that they could be transcribed. But in the journal entry of judgment, or nunc pro tunc order, made on June 5, 1947, it is stated that on April 7th the trial court, after setting aside the property of the separate parties to them, specifically made disposition of part of the property, giving to defendant the equipment and professional business of the defendant located in the Medical Arts Building, Oklahoma City, a paid-up life insurance policy on the life of defendant, a promissory note held by the defendant on which was due the principal sum of $1,500, on condition that the defendant pay to plaintiff the sum of $11,100 in cash, and that it also divided the defendant's checking account in the sum of $9,300, after requiring certain payments to be made therefrom, and divided the cash in the possession of plaintiff, requiring her to account for and pay one-half thereof to the defendant. It then provided that all the rest, residue and remainder of properties, real or personal, standing in the names of plaintiff and defendant, respectively, should be divided equally between the parties; that plaintiff should account for and transfer and convey to the defendant a one-half-interest in the property standing in her name, and that defendant should likewise account for and transfer and convey to plaintiff a one-half interest in the properties standing in his name, the details to be set forth in a formal journal entry of judgment.

From the record it appears that the properties to be divided, and which were not specifically divided by the trial court on April 7th, were composed of mineral interests and oil and gas leasehold interests, the amount and

value of which had theretofore been testified to by the parties, and of certain corporate stocks, and that the division of all these properties equally between the parties apparently did not involve the exercise of any further judicial discretion or require further determination, but were simply matters of detail which involved only the form of conveyance and amount of interest to be conveyed. At the hearing held on the motion of plaintiff to clarify the judgment, and her motion to vacate the same, the trial court stated that he had intended to and did render final judgment at that time as to the divorce and property rights, and it appears that the parties and their attorneys so understood. This understanding is evidenced by the fact that both parties were apparently satisfied with the division, and that the attorneys had prepared numerous conveyances of the property from the defendant to plaintiff and from plaintiff to defendant, and that being in doubt about the proper distribution of certain items, and unable to agree thereon, they consulted with the trial court on at least two occasions in an effort to arrive at a complete agreement, so that the journal entry of judgment could be formulated.

That the plaintiff understood that the court had rendered final judgment on April 7, 1947, is also evidenced by the application to clarify the judgment filed by her on May 3, 1947, in which she states that the court entered its decree in said cause on April 7th, and made certain findings with reference to the jointly acquired property of plaintiff and defendant, and that her attorneys and the attorneys for the defendant had attempted to make a division of the property in accordance with the court's decree, by transferring titles to the various properties to each other, but had been unable to agree on such division to the satisfaction of their clients, and requested the trial court to make more clear and specific the division of the property in certain respects.

From a careful study of the record we reach the conclusion that the trial court intended to and did, on April 7, 1947, render judgment as to the divorce and as to the property rights of the parties, and that said judgment was a sufficient determination of the rights of the parties in the joint or community property so as to render further inquiry in their rights unnecessary. The fact that the judgment was not reduced to writing in a formal journal entry does not render it any less the judgment of the court. Taliaferro v. Batis, 123 Okla. 59, 252 P. 845; Adamson v. Brady, 199 Okla. 55, 182 P. 2d 748. In the last cited case we said:

"The rendition of a judgment is the judicial act of the court in pronouncing the sentence of the law on the facts as ascertained by the pleadings and verdict. A judgment is rendered, within the meaning of the law, at the time it is pronounced by the court and is final, valid and enforceable as between the parties from that date, without formal entry."

Plaintiff's second contention, that a divorce action abates on the death of a party prior to a final judgment is, we think, disposed of by what we have said above. Unquestionably, by the clear weight of authorities, the death of a party to a divorce action prior to rendition of a final judgment therein terminates the status or relationship of marriage theretofore existing and leaves the parties as though the action had never been brought. Since we hold that the judgment of the trial court on April 7th, was a final judgment, the rule of law above announced and the authorities cited in support thereof by plaintiff have no application to the instant case.

Plaintiff's third contention, that the judgment rendered on June 5, 1947, and evidenced by the journal entry of judgment filed on July 7, 1947, was not a judgment nunc pro tunc and could not be made the judgment of the court as of April 7th, is well taken and

must be sustained.

In Marker v. Gillam, 80 Okla. 259, 196 P. 126, we said:

"A nunc pro tunc entry is one made now of something which was actually previously done, to have effect as of the former date. Its office is not to supply omitted action by the court, but to supply an omission really had but omitted through inadvertence or mistake."

We have many times held that orders nunc pro tunc can only be entered for the purpose of correcting errors in previous orders on judgments based on proceedings theretofore had. Courtney v. Barnett, 65 Okla. 189, 166 P. 207; Jones v. Gallagher, 64 Okla. 41, 166 P. 204, and cases cited in Note 41 to Title 12, §1031, O.S.A. This being the law, the trial court could not, by order nunc pro tunc, make any disposition of the property belonging either to the plaintiff or defendant which was not considered or disposed of in the judgment of April 7th, but could correct or clarify its judgment as to the various items of property which it undertook to dispose of by the judgment of April 7th, in order that such judgment might be correctly set forth in the journal entry of judgment. Property not disposed of by the judgment of April 7th, whether title thereto was vested in the plaintiff or defendant, remains their property.

In Goldsborough v. Hewitt, 23 Okla. 66, 99 P. 907, we said:

"The rights of the wife, therefore, in her husband's estate, after a divorce is granted, are regulated and determined exclusively by the provisions of the decree of divorce, unless there is some valid contract between the husband and wife. When a wife, after the divorce, seeks to assert any claim to any part of the husband's property, homestead or otherwise, she must establish that right by the decree, or by a valid contract between herself and husband."

To the same effect is Steiner v. Steiner, 156 Okla. 255, 10 P. 2d 641, and Terrill v. Laney, 200 Okla. 308, 193 P. 2d 296. If, as to properties standing in the name of defendant and not distributed by the decree of April 7th, plaintiff claims an interest therein as community property or otherwise, she can assert that right in a separate action against his heirs or his personal representative. Kirschner v. Dietrich, 110 Cal. 502, 42 P. 1064; Ambrose v. Moore, 46 Wash. 463, 90 P. 588. The trial court, before rendering judgment nunc pro tunc on June 5, 1947, stated that in its opinion the cause of action for division of property did not abate upon the death of defendant. It is unnecessary for us to determine whether or not such cause of action abated, since such cause of action on the part of plaintiff was merged in the judgment of April 7th. Cressler v. Brown, 79 Okla. 170, 192 P. 417. Under the decisions in Goldsborough v. Hewitt, supra, and Terrill v. Laney, supra, the rights of plaintiff in the property of defendant, arising or growing out of their marital relationship, were only such as were vested in her by the terms of that decree. If she had any other rights, contractual or legal, she could assert them in a separate action. The trial court could not by order nunc pro tunc enlarge or diminish the rights vested in her by the original decree. If the trial court could, as all the cases hold, by order nunc pro tunc correct errors or omissions in the record of the judgment rendered by it in order that the property division should be in accord with its judgment as rendered, it could also by such an order amplify or make more definite its judgment with reference to the division of the property, so that the record of the judgment as contained in the journal entry would conform to the judgment it rendered. Further than that, however, it could not go.

As heretofore stated herein, the plaintiff, at the time of the rendition of the judgment of April 7th, was apparently satisfied therewith. Although she recognized the judgment as a final judgment she filed no motion for new trial; made

no objection to the terms of the judgment, but her attorneys, in co-operation with the attorneys for the defendant, endeavored to carry out the judgment of the trial court as rendered. Failing to do so, her attorneys filed in the cause the application to clarify the judgment, in which they recognized the same as a final judgment.

The motion to vacate the judgment and the motion asking the court to hold that its pronouncement of April 7th was not a judgment was filed, subsequent to the death of the defendant, in order that plaintiff might obtain the benefit of 84 O. S. 1941 §213, subdivision 2, and thus acquire title to all the property of the parties acquired by their joint efforts during coverture.

There was no allegation or statement in the motion to vacate or to declare the pronouncement of April 7th not a judgment setting forth any valid ground for the vacation of the judgment of April 7th, or which would justify the court in holding that it was not a valid judgment. We think the trial court properly denied said motion, and that its action in so doing was not error, but it erred when it reattempted to divide the property in a manner different from the division in the original judgment of April 7th, and in attempting to divide property not considered or disposed of in the proceeding at the time that judgment was rendered, by order nunc pro tunc. That order could only set forth more plainly and clearly the manner in which the property considered by it at the time the judgment of April 7th was rendered should be equally divided between the parties.

Plaintiff also contends that the allowance of attorneys' fees in the order nunc pro tunc, and the failure of the trial court to include such attorneys' fees in the first judgment, showed that the trial court understood that the first judgment was not a final judgment, but was interlocutory only. We do not agree with this contention.

It is true that in Friedman v. Friedman, 132 Okla. 45, 269 P. 257, we held that only one judgment could be rendered in an action, and that if the court, upon rendering judgment in a suit for divorce and the adjustment of property rights, continued the matter for the fixing of attorneys 'fees, that it could have supplemented its main judgment by vacating it and then rendering judgment to include counsel fees to be awarded plaintiff's attorney.

The facts in the instant case, however, and the conduct of the parties, distinguish this case from the situation in the Friedman case. In the instant case there was no issue as between the parties over the question of attorneys' fees. The only reference to attorneys' fees in plaintiff's petition was in the prayer thereof, and we have often held that in the making of issues to be determined by the court the prayer constitutes no part of the petition. Harmon v. Hines, 160 Okla. 120, 16 P. 2d 94; Fraley v. Wilkinson, 79 Okla. 21, 191 P. 156. Plaintiff recognized that the question of attorneys' fees was not an issue in the case by including in the amendment to her petition, filed after the death of defendant, an allegation that she was entitled to a reasonable attorneys' fee to be paid by defendant. From the record it appears that no objection was made by either party to the action of the trial court in passing the matter to be considered at a later date, and that when the administrator of defendant's estate filed his petition for revivor, he stated that the court had not fixed and determined a reasonable attorneys' fee for plaintiff's attorneys, and that he made the application, among other purposes, for the purpose of having the court fix and determine a reasonable fee for plaintiff's attorneys in said action. When the matter was taken up by the trial court defendant did not oppose the fixing of the fee by the trial court, but consented thereto and offered no evidence to controvert the testimony of the witnesses pro-

duced by attorneys for plaintiff to testify as to the value of their services. Neither party objected or excepted to the action of the trial court in fixing the attorneys' fees and neither party on this appeal questions the right of the court to determine said attorneys' fees or the amount fixed by the court. Thus, it appears that in the instant case there was no contest over the fact that defendant should pay plaintiff's attorneys a reasonable fee, and all the parties submitted the question to the trial court and accepted its determination. Under these circumstances we think the error of the trial court, if any, in determining the attorneys' fees separate and apart from the judgment previously rendered, was harmless and was waived by the parties, and that the decision on the question of attorneys' fees is binding upon the parties, although the court did not vacate the original judgment and re-render a judgment which included the attorneys' fees.

Lastly, plaintiff contends that the trial court erred in distributing to the defendant a portion of her share of the community property for the reason that upon his death she became vested with an undivided one-half interest in all his property which was community property acquired during coverture. From the record it appears that in 1943 the parties filed an election in conformity with the 1939 law then in effect, to come under that law. 32 O.S. 1941 §52. The 1945 community property law, 32 Cum. Supp. 1947 §66 et seq., was in effect at the time of defendant's death, and by section 75 of Title 32, it is provided that in the event of the dissolution of marriage by the decree of any court of competent jurisdiction the husband and wife shall each be vested with an undivided one-half interest in the community property as tenants in common "but nothing herein shall prevent the court from having the same powers with respect to said property as to other property of either the husband or wife".

In the instant case the trial court, under authority of that statute, divided all the community property which the parties brought to its attention during the trial of the case equally between the parties, whether the title to such property was vested in the husband or wife. In so doing the trial court did not err.

The judgment of the trial court is reversed, with directions to embody in an order or journal entry nunc pro tunc a judgment specifically dividing the property of the parties as it was divided by its original judgment of April 7, 1947, and allowing the attorneys for plaintiff the fee fixed by it at the hearing on the matter of attorneys' fees held by it on June 5, 1947, and for such other proceedings, if any are necessary, to correctly and completely record the judgment of April 7, 1947.

DAVISON, C.J., and WELCH, CORN, GIBSON, JOHNSON, and O'NEAL, JJ., concur. HALLEY, J., dissents in part.

HALLEY, J. (dissenting in part). I agree with the majority opinion that the judgment entered on April 7, 1947, was final; but in my opinion the trial court had the right to modify its judgment during term time, and this is what it did. It is well settled in this jurisdiction that a trial court has the right, during the term in which a judgment is rendered and entered, to set the same aside, to vacate it, to correct it, or to modify it. McNac v. Kinch, 113 Okla. 59, 238 P. 424; McNac v. Chapman, 101 Okla. 121, 223 P. 350; Friedman v. Friedman, 132 Okla. 45, 269 P. 257; Taliaferro v. Batis, 123 Okla. 59, 252 P. 845; Tulsa Exchange Co. v. Kiester, 199 Okla. 440, 186 P. 2d 808; Tillman v. Tillman, 199 Okla. 130, 184 P. 2d 784; Levy v. Oklahoma City, 198 Okla. 414, 179 P. 2d 465; Pitts v. Walker, 188 Okla. 17, 105 P. 2d 760; Haskell v. Cutler, 188 Okla. 239, 108 P. 2d 146.

The majority opinion, by holding that the judgment of April 7th was final and not subject to modification, avoids the necessity of answering some pertinent questions in this case the first of which is whether or not a divorce

action abates upon the death of one of the parties. Certainly it seems to be the settled rule that where no property is involved, a divorce action abates upon the death of one of the parties; but the better rule seems to be that, where property is involved, the action does not abate upon the death of one of the parties.

Section 1052, Title 12, O. S. 1941, which is as follows:

"No action pending in any court shall abate by the death of either or both the parties thereto, except an action for libel, slander, malicious prosecution, for a nuisance, or against a justice of the peace for misconduct in office, which shall abate by death of the defendant. (R.L. 1910, §5280.)",

does not cover a divorce action, and certainly, under the statute, such an action does not abate. A very thorough consideration of this question is found in Porter v. Lerch, 129 Ohio, 47, 193 N.E. 766, and it reaches the definite conclusion that the action for divorce does not abate upon the death of one of the parties, where property rights are involved. To the same conclusion are Price v. Price, 114 Fla. 233, 153 So. 904; Graham v. Graham, 227 Iowa, 223, 288 N.W. 78; Oliver v. Oliver, 216 Iowa, 57, 248 N.W. 233; Craig v. Craig, 112 Kan. 472, 212 P. 72; Craig v. Craig, 110 Kan. 13, 202 P. 594; Swanson v. Swanson, 182 Minn. 492, 234 N.W. 675; Caddell v. Caddell, 204 Mo. App. 182, 222 S. W. 873; Tenaglia v. Tenaglia, 124 Pa. Super. 124, 188 A. 370; Upperman v. Upperman, 119 Pa. Super. 341, 181 A. 252; Craddock's Adm'r v. Craddock's Adm'r, 158 Va. 58, 163 S.E. 387; and 27 C.J.S., Divorce, Sec. 188 (see note 93.) These cases deal primarily with the proposition of the right to appeal from a judgment after the death of one of the parties. In Chatterton v. Chatterton, 231 Ill. 449, 83 N.E. 161, it was held that a husband may appeal a decree of divorce where the wife died after judgment but before appeal, where property rights were involved. I see no reason, if such a case may be appealed, why the trial court could not grant a new trial as to the property rights or modify the judgment previously entered.

The record in the case at bar shows only five instances where the judgment of April 7th was modified or changed by the judgment of June 5th. The first instance was in regard to the policy of life insurance with the New York Life Insurance Company for $10,700, which originally had been awarded to the defendant, and in the modified judgment was awarded to the plaintiff. In the second instance, the plaintiff was given a one-half interest in a $2,500 life insurance policy on the life of E. K. Mabry with the Reserve Loan Life Insurance Co. of Texas. In the third instance, the plaintiff was given a one-half interest in a note from George L. Baird to E. K. Mabry, in which she had not received any interest originally. In the fourth instance, she was given $825 in cash in lieu of her one-half interest in the burial lots in Rose Hill Burial Park in Oklahoma City. She had been awarded originally $11,100 in cash, and in lieu thereof was given a $10,700 life insurance policy, one-half interest in a $1,500 note, one-half interest in a $2,500 life insurance policy and $825 in lieu of one-half interest in the burial lots, or a total of $13,525. In the fifth instance, she was given a sun lamp, portable typewriter, and two paintings not mentioned in the original judgment of April 7th. In addition, the court made as equal division between the parties as was reasonable under the circumstances.

Somewhere in the past we have heard of that old maxim that "equity delights to do justice, and that not by halves", which undoubtedly means that in a case of equitable cognizance, as a divorce action is commonly recognized to be in this state, the court is interested in rendering a complete decree, adjusting all rights and protecting the parties against future litigation. See 30 C.J.S., Equity, §100, and §67 et seq. The majority opinion ignores that maxim and states that all of the parties' rights have not been settled in this case and

that the plaintiff will have to assert her rights in a separate action as to certain property which was fully disposed of by the trial court. I submit that under the facts in this case the action of the trial court is the saner way to dispose of the case. No trial judge will know more about the facts of the case and get a clearer picture of the entire situation than did the trial judge in this particular case. He had both the plaintiff and the defendant before him, which no judge in the future can do. He undoubtedly had a better conception of the rights of the parties than any judge in the future could have. There is no serious contention made that the division of the property made by the trial judge was not equitable and just. The thing that the plaintiff wanted was to get the entire judgment set aside, because of the death of the defendant, that she might take under the laws of descent and distribution, and she was not complaining too much as to the final results of the case if the entire judgment was not to be set aside. In my opinion, the trial judge rendered a fair decision here, and the majority opinion necessitates the case being disposed of piecemeal when it should be disposed of in one decision.

I dissent from the action of the court in refusing to permit the trial court to modify the judgment of April 7th and to make a complete disposition of the case. The action of the trial court should have been affirmed in toto.