In the Matter of the ESTATE of Tom CLARKE, Deceased, and Judicial Determination of the Death of Tom Clarke, with Ruth Clarke, and Termination of Joint Tenancy.

Madeline Clarke ROSE, Appellant,

v.

Ruth CLARKE, Appellee.

No. 47159.

Court of Appeals of Oklahoma, Division 2.

March 25, 1975.

Released for Publication by Order of Court of Appeals April 17, 1975.

. BACON, Judge.

In this appeal appellant is challenging the propriety of the trial judge's refusal to disqualify himself from this case in addition to challenging the purported judgment ."entered" by the trial judge. The issue is not whether he could enter judgment but did he "enter" judgment. We agree with appellant and find that the circumstances of this case warrant reversal for a new trial before another trial judge.

Tom Clarke died intestate on March 12, 1971, leaving his widow (appellee) and one daughter (appellant) as his heirs. On March 23, 1971, appellee filed her petition to settle Mr. Clarke's estate waiving her right of appointment as administratrix in favor of appellant.

. The administration of the estate continued in a routine manner, except for an appeal over Oklahoma taxes, until November 1972. At this time appellee filed an application to remove appellant as administratrix, alleging the latter's failure to inventory and report all assets of the estate plus unnecessarily continuing the administration of the estate. This application was set for hearing on January 30, 1973.

.Before this hearing started, the trial judge took both parties into his chambers for a "conference" while their counsel remained in the courtroom. It was during this off-the-record "conference" that the trial judge inquired how appellant had acquired a farm from her father (which was not in his estate). She replied, "By deed," some 20 years previously. Even though it was not an issue, the judge then told her, in effect, the deed would not stand up in court and that she should settle with appellee. This "conference," the record indicates, was just one of several the trial judge had with the parties, some of which were held in the absence of the other party and her attorney. One such "conference" ended with appellant stating she "just as well go home, the Judge has already got his mind made up." After the January 30 "conference" with the trial judge, the par-

Harvey A. Rotman, Tulsa, for appellant.

Wallace & Owens, Miami, for appellee.

ties negotiated for some time and came back into the courtroom and announced they had reached an agreement. The agreement was vaguely explained to the court, which took no further action at that time other than express that he was "proud that you have come to this agreement." Two of the attorneys were to draw up the "agreement" and submit it to the parties for signatures. And with this the court adjourned. Thereafter the agreement was prepared but neither party would sign it.

Subsequently on May 8, 1973, appellee filed another petition to remove appellant. The record contains an order and notice of hearing on May 21, 1973, but no certificate of service on either party. Apparently no hearing was held.

Next in the record is a "Journal Entry and Order" prepared by the trial judge and filed May 22, 1973, which was not approved by any party or attorney. This "Journal Entry" starts out "Now on this 30th day of January, 1973 . . . . " and goes on to recite the parties had reached an agreement, purports to detail same and orders the parties to "draw up such legal documents as necessary to effectuate this agreement and to prepare the Final Account." [1] On this same day the trial judge prepared and filed an order, without service to anyone, and without reciting the presence of any party or attorney, dismissing the May 8 petition to remove appellant because neither party had complied with the "Order of January 30, 1973, by signing the necessary agreement . . . . " Neither appellant nor her attorney received a copy of the "Journal Entry" for 30 days or until June 21.

The next instrument in the record is a "Notice of Hearing Final Account and Petition for Determination of Heirs, Distribution and Discharge."

The evidence shows appellant did not know about the filing of the foregoing instruments filed between May 8 and May 24. They were not sent to her or her attorney.

On July 23, 1973, appellant filed a "Motion to Vacate Journal Entry and Order" alleging the journal entry of January 30, 1973, was coerced by the trial judge and that there were irregularities in obtaining the journal entry. Appellant also filed at this same time an "Application to Disqualify Judge" alleging among other things, that bias and prejudice of the trial judge resulted from his friendship with appellee; that the trial judge conferred with appellee and appellant without their attorneys being present; that the trial judge prepared the journal entry and order and filed same without notice thereby precluding appellant's right of appeal; that the trial judge had conferred with appellee outside the presence of appellant; and other allegations.

Appellant's motions were heard on July 26, 1973, with most of the foregoing being brought out by evidence. During this "hearing" appellant was attempting to testify that the trial judge (who was holding this very hearing) had said he had had dinner with appellee. The trial judge, who chose to pass on his own challenged behavior defensively interposed, "I think the Court should remind the witness that the witness is under oath and any mistreatment would be committing perjury." To this, the apparently frightened and intimidated appellant respectfully replied, "I'm not going to put that in the record because I remember you saying it but I can't give enough details about it. I do not want to tell a falsehood on this stand. So I will ask you to erase that. It was made to me, but

---

1. The purported adjudication portion of the "Journal Entry" reads as follows :
"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the agreement between the parties approved in open Court on this the 30th day of January, 1973, is legal and binding upon Madeline Clarke Rose and Ruth Clarke, the sole heirs of Tom Clarke. Gene Davis, Attorney for the Estate and F. H. Martin, Attorney for Madeline Clarke Rose, are ordered to draw up such legal documents as necessary to effectuate this agreement and to prepare the Final Account."

I cannot give the right time or the place. And I don't want to tell it wrong."

The trial court denied appellant's motions and an effort to procure a writ of prohibition in the supreme court failed based on 12 O.S.1974 Supp., ch. 2 app., Rule 15 (previously 20 O.S.1971, ch. 1 app. 2, Rule 9(H)), which became effective September 1, 1973 (requiring the application to be taken to the Chief Judge of the county within a certain time).

On December 18, 1973, the trial court ignored a second plea to disqualify and said: ". . . [The] Journal Entry and Order . . . was arrived at on January 30th, 1973, and was filed May 22nd, 1973, and there was no action in this case until the Motion to Vacate . . . July 23rd which would be more than thirty days. . . . Unless you [appellant] can prove to the Court that you do not . . . come within the Rule that the Supreme Court has stated. . . . I don't think that you come within the rules. So. the Court will have to summarily overrule your Motion for Vacation of the Journal Entry and Order."

 We think the trial court erred in his assessment of what happened. To begin with *no judgment was rendered or entered* by the trial court at the January 30, 1973, "hearing." There is nothing in the record to show or indicate the judge or the parties considered a judgment was entered or rendered at the January 30 "hearing." In fact the circumstances indicate just the opposite, that is for example, appellee's subsequent filing of another petition to remove appellant as administratrix. Why would appellee file such a petition if she considered a judgment to have been rendered or entered? No evidence was heard at that "hearing" but only an announcement that an agreement had been reached. That agreement was later abandoned by the parties before the judge filed his journal entry on May 22, 1973, which he did while another petition to remove was pending. Appellant did not receive a copy of the journal entry until 30 days aft-

er the trial judge filed it, which was the last date to start an appeal or move to vacate the "journal entry." We think that since no judgment was entered on January 30, 1973, and that the journal entry filed on May 22, 1973, was on file for 30 days without appellant having notice of same, that appellant would have 30 days to appeal or file her motion to vacate from the date she received notice of the purported "Journal Entry," or that judgment had been rendered. 12 O.S.1971 § 1031.1. Her motion to vacate and disqualify was timely filed on July 23, 1973. In other words, first we think the journal entry did not amount to a judgment because (1) none was entered January 30; and (2) none could have been entered because there was no evidence to support it. That is, he heard no evidence on January 30, 1973, and at most an agreement was announced which was never consummated. Thus, there would be nothing to support the journal entry. However, even if the "Journal Entry" could be deemed to be a judgment, appellant should have 30 days from the date she had notice of its first entry which was on June 21, 1973. To summarily overrule the motion to vacate would therefore be error.

Based upon this "Journal Entry" the judge then prepared and filed an order dismissing appellee's petition for removal as a prelude to what he would eventually enter as a final decree of distribution and discharge awarding almost all the estate to appellee instead of one-half as provided by the law of intestate succession.

 Suffice it to say that the record before us indicates that the trial judge should have disqualified himself from the case, and that the record shows the "agreement" entered into, upon which this judgment is based, was a result of actions by the trial court which can only be rectified by starting over with a different trial judge. In Callaham v. Childers, 186 Okl. 504, 99 P.2d 126 (1940) where a party sought mandamus to require the judge to certify his disqualification the court said: "When cir-

cumstances and conditions surrounding litigation are of such nature that they might cast doubt and question as to impartiality of any judgment the trial judge may pronounce, said judge should certify his disqualification." Citing State ex rel. Harden v. Edwards, 176 Okl. 187, 56 P.2d 402 (1936) the court went on: "Pointing out that it was the duty of this court to be vigilant in removing and eliminating every possible semblance of doubt or suspicion of the fairness or impartiality of the trial judge, we granted the writ of mandamus, *without any finding as to actual bias or prejudice,* a condition of mind which is ordinarily not capable of being proven by direct or positive evidence. State ex rel. Conley v. Parks, 32 Okl.Cr. 61, 239 P. 941. . . . The composite or collective impression gained by careful consideration of the whole situation prompts us to the conclusion that it would be better for all parties concerned, including the respondent and the judiciary in general, if the writ should be granted." (emphasis ours)

The cause is therefore reversed, and remanded to the trial court with directions to vacate the judgment, reinstate appellee's petition to remove appellant and disqualify himself from the case.

BRIGHTMIRE, J., concurs.

NEPTUNE, Presiding Judge (dissenting).

I am unable to concur.

The primary grounds established by the majority opinion for reversal of the trial court concern the validity and existence of the judgment purportedly given on January 30, 1973. The foundation of my dissent is that I think the record is sufficient to support the trial judge's conclusion that the parties sought and obtained on January 30 an agreed judgment despite the lack of formalizing it at that time by the judge's words in open court or by written journal entry. Had the parties been negotiating an agreement merely, there would have been no occasion for the judge to have gone upon the bench to receive the agreement in open court as he did. I think all parties and all counsel and the judge understood the act as a judgment.

Title 12 O.S.1971 § 681 defines a judgment as "the final determination of the rights of the parties in an action." By the terms of the agreement a final distribution of the estate would be effectuated between the two parties. That the court had jurisdiction to render a judgment is not at issue; both parties were before the court and the court had jurisdiction over the subject matter—the estate.

All facts and circumstances clearly point to the inescapable conclusion that the parties were present in court that day to procure a consent judgment. The original reason for the parties' appearance at the courthouse on January 30 was a hearing on appellee's application to remove appellant as administratrix of the estate. This application was withdrawn by appellee at the very beginning of the proceeding. Yet the parties, their lawyers, and the trial judge remained in the courtroom, an agreement reached by the parties as to the distribution of the estate was presented to the judge in open court, and such was recorded by the court reporter.

I do not believe the concurrence of all these events was designed for merely the agreement of the parties only, a conclusion one would have to reach to accept the majority's finding. This was more than a mere discussion of what the parties planned to do—it was the submission to the court of the terms of a consent judgment.

A consent judgment is defined as "[a] judgment, the provisions and terms of which are settled and agreed to by the parties to the action." Black's Law Dictionary 978 (4th rev. ed. 1968).

In Oklahoma, the law is well settled as to agreements reached between parties in open court. In Cobb v. Killingsworth, 77 Okl. 186, 187 P. 477 (1920) it is stated: "A judgment by consent of the parties is more than a mere contract in pais; having the sanction of the court, and entered as its determination of the controversy, it has

all the force and effect of any other judgment . . . ."

In Martin v. Martin, Okl., 511 P.2d 1097 (1973) the court said: "Parties to a suit have the right to agree to anything they please in reference to the subject-matter of their litigation, and the court, when applied to, will ordinarily give effect to their agreement, if it comes within the general scope of the case made by the pleadings." Thus Oklahoma recognizes and gives effect to consent judgments, with the same binding force as any other judgment. That there was no evidence presented and that later one or both of the parties changed their minds as the majority opinion points out, bears no significance as to the binding effect and validity of consent judgments.

Aside from fulfilling the statutory requirements set out in 12 O.S.1971 § 681 I have found no authority in Oklahoma law which places further requirements on the court to effectuate a valid judgment.

The majority opinion also points to the delay in filing a journal entry, and lack of notice to appellant that this document was filed as further evidence that this is not a judgment. In the case of Austin v. King, Okl., 404 P.2d 1009 (1965) it is stated:

"The validity of a judgment does not depend upon the formal signature of the trial judge to the journal entry. A judgment in fact rendered but not formally entered on the journal is valid and effective from the date of its pronouncement and a record memorial thereof may be supplied by an entry nunc pro tunc."

The entry of the judgment is merely a ministerial act of the court. Adamson v. Brady, 199 Okl. 55, 182 P.2d 748 (1947). I can find no authority that such acts require formal notice be given to the parties. Here, appellant had actual notice as to the contents of the journal entry as she was present and through her lawyer terms were provided the court which constituted the judgment approved and entered.

Additionally, the majority contends that the filing by appellee of the second petition to remove appellant as administratrix indicates that appellee did not consider the January 30 proceeding a judgment. I fail to see any nexus between the filing and this conclusion. In this petition appellee talks about the agreement being "approved by this Honorable Court." The petition seeks to remove appellant as administratrix for disregarding the provisions of the agreement, and because of appellee's belief that appellant was "attempting to keep the estate in the process of administration so she can keep control of all of this petitioner's interest." There is nothing in the January 30 judgment which forbids appellee from petitioning for appellant's removal as administratrix. To the contrary, ignoring a judgment entered and delaying the closing of the estate would be adequate reasons for wanting to remove appellant. With another person as administratrix the judgment of January 30 could be enforced without having to utilize contempt proceedings. Hence I find no indication that appellee's action demonstrates no judgment to have been rendered on January 30.

Once a party has submitted to the trial court an agreement which is subsequently adopted by the court as a judgment it would create a poor policy to permit a party to subsequently void the judgment because of a later change of mind. I feel such practice should not be tolerated.

The majority's second ground for reversal is based upon "the propriety of the trial judge's refusal to disqualify himself from this case."

The grounds appellant alleges for such disqualification are: (1) the trial judge and appellee are friends; (2) during the course of settlement negotiations on January 30, 1973, the judge conferred with the parties without counsel for appellant being present and coerced her, resulting in her acceding to the settlement entered on January 30, 1973.

It is admitted that the first allegation is true, but it is also undisputed that the judge is a friend of appellant also. To permit disqualification upon the basis that the judge is acquainted with a party is unrealistic when confronted with circumstances such as in the instant case, where a trial court judge sits and lives in a relatively small community. Ordinarily merely showing that a trial judge is acquainted with the parties before the court is not sufficient to warrant an application for disqualification for bias and prejudice be granted.

As to the second allegation, the burden is upon appellant to establish the judge's bias or prejudice. The bias or prejudice objectionable under Okl.Const. art. 2, § 6 is that bias for or against a person which ignores the law or facts of a particular case. Oklahoma Co. v. O'Neil, Okl., 440 P.2d 978 (1968). After a thorough review of the testimony adduced at the hearing on this motion, there appears no affirmative showing of bias or prejudice on the part of the judge.

Absent a showing of actual bias or prejudice a judge may nonetheless be disqualified "[w]hen circumstances and conditions surrounding litigation are of such nature that they might cast doubt and question as to impartiality of any judgment the trial judge may pronounce . . ." Callaham v. Childers, 186 Okl. 504, 99 P.2d 126 (1940). Here again, however, the record of the instant case does not support such a finding.

Appellant clearly has not affirmatively shown bias and prejudice from the facts in the record and as such the ruling of the trial court should be upheld. The applicable standard is set forth in Graham v. Graham, Okl., 434 P.2d 245 (1967) where it is stated:

"[A]n application to disqualify a judge in a civil proceeding on the grounds of prejudice or bias is addressed to the trial court's sound discretion, whose ruling thereon will not be reversed on appeal, unless a clear abuse of discretion appears."

If, as I contend, the judgment entered on January 30, 1973, is valid, then the ruling as to the motion to disqualify the trial judge for bias and prejudice does not affect the outcome of this case. As will be subsequently shown, only a motion to modify the journal entry to add an omitted term of the agreement, and the order allowing final account of administratrix, determine heirs, and the final decree of distribution and discharge were properly before the court. All that remained for the trial judge to do was order the distribution of the estate in accordance with the consent judgment of January 30, 1973. This the trial court did.

In the case of State ex rel. Nichols v. Johnson, 40 Okl. 511, 139 P. 699 (1914) the court held that the fact that a judge was disqualified by prejudice in a matter concerning probate of a will would not automatically disqualify him from determining other questions involving administration of the estate. Applying this to the instant case—the majority's finding of bias and prejudice would likely disqualify the judge from presiding over a properly brought motion or petition to vacate the January 30, 1973, judgment—but this disqualification would not of necessity extend to the judge's determining the final order of distribution where, as here, the only act to perform is non-discretionary—the application of the terms of the prior judgment.

Proceeding from the determination that no bias or prejudice existed, and the acts of January 30, 1973, constitute a judgment, it is necessary to deal with appellant's next assertion, that her motion to vacate the journal entry and order of January 30, 1973, was improperly overruled. This motion was filed on July 23, 1973. On December 18, 1973, when it came before the trial judge it was dismissed without hearing because "the Motion to Vacate the Journal Entry and Order if it is not filed within ten days, why the Court does not have jurisdiction. This is the order of the

Supreme Court which you obtained before the court." [1]

It is clear that the rationale for the trial court's ruling on the motion to vacate is erroneous. The order of the supreme court applies only to the appeal taken from the denial of the application to disqualify. The appeal did not involve or in any manner affect the statutorily prescribed method for presenting a motion for vacation of a judgment. It is a well established rule in Oklahoma, however, "that a correct judgment, although based upon wrong reasons, will not be set aside on appeal." Mitchell v. Lindly, Okl., 351 P.2d 1063 (1960). Therefore it becomes necessary to ascertain whether this motion to vacate judgment is improper in other aspects so as to allow affirmance of the trial court's ruling.

Motions to vacate judgments are brought under the authority of 12 O.S.1971 § 1031. Appellant seeks a vacation of the judgment because of an omission of a term from the order and other irregularities, grounds under subdivision three of § 1031, and due to fraud by appellee coupled with coercion by the trial judge, grounds under subdivision four of § 1031. Of importance here is whether the motion to vacate was properly before the court so as to give it jurisdiction. The proper procedures are contained in 12 O.S.1971 §§ 1031.1, 1032, 1033 which are as follows:

§ 1031.1: "Within thirty (30) days after the rendition of a judgment, the court, of its own initiative or on motion of a party, may correct, open, modify or vacate the judgment. The court may prescribe what notice, if any, shall be given."

§ 1032: "The proceedings to correct mistakes or omissions of the clerk, or irregularity in obtaining a judgment or order, shall be by motion, upon reasonable notice to the adverse party or his attorney in the action. The motion to vacate a judgment because of its rendition before the action regularly stood for trial can be made only within three (3) months after the rendition of said judgment."

§ 1033: "The proceedings to vacate or modify the judgment or order, on the grounds mentioned in subdivision[s] four ['For fraud, practiced by the successful party, in obtaining the judgment or order'] . . . of the second preceding section [12 O.S.1971 § 1031], shall be by petition, verified by affidavit, setting forth the judgment or order, the grounds to vacate or modify it, and the defense to the action, if the party applying was defendant. On such petition, a summons shall issue and be served as in the commencement of an action."

Additionally, pursuant to 12 O.S.1971 § 1038 actions under subdivision four of § 1031 must be commenced within two years after judgment is rendered or order made; actions under subdivision three of § 1031 must be within three years after defendant has notice of judgment.

It first must be determined if the motion made was timely. Under the statutes aforementioned the periods commence running from "rendition of a judgment." The term "rendition of a judgment" applies to the pronouncement of the judgment in court as opposed to its entry in the journal. "The rendition of a judgment is the judicial act of the court in pronouncing the sentence of the law on the facts as ascertained by the pleadings and verdict. A judgment is rendered, within the meaning of the law, at the time it is pronounced by the court and is final, valid and enforceable as between the parties from that date, without formal entry." Mabry v. Baird, 203 Okl. 212, 219 P.2d 234 (1950); Adamson v. Brady, supra. Hence, under 12 O.S.1971 §§ 1031.1, 1032, 1033 & 1038 the time begins to run in

1. The order to which reference is made reads as follows: "By virtue of Rule 9(H), Title 20 O.S., 1971, Chapter 1, Appendix 2, Rules on Administration of Court [withdrawn Oct. 1973]. Petitioners [appellant's] Application to assume original jurisdiction in Petition for Writ of Mandamus are denied, jurisdiction denied and Writ denied. Done in conference by the Supreme Court on the 21st day of November, 1973."

the instant situation from January 30, 1973, the date of rendition of the judgment. The motion to vacate was filed on July 23, 1973, almost six months after rendition of judgment.

The motion cannot be brought under the authority of § 1031.1 as it has a 30-day limitation. Action would be timely under §§ 1032 and 1033.

Having determined that filing was timely within §§ 1032 and 1033 it must next be determined if proper procedural requirements are satisfied so as to invoke their authority.

Section 1033 is not applicable here, for to invoke its authority one must meet its requirements of filing of a petition with affidavits and summons, which was not done.

Consequently, only that part of the motion to vacate dealing with subdivision three of § 1031 is properly before the court. The motion urges that the "Journal Entry and Order" does not truly reflect the agreement announced in open court on January 30, 1973. The briefs point out that part of the announced agreement was omitted from the journal entry and order. Omitted was that portion of the announced agreement whereby appellee is to deed her interest in the property in Maysville, Arkansas, to appellant. Appellee in her brief admits that this provision should be included in the order, and tenders the same. Other than for correction of this omission, there is nothing in the record and nothing

is shown in the briefs to warrant reversal for the purpose of conducting a further hearing. The hearing held on the issue of disqualification of the trial judge was permitted to explore all the substantive facets relating to the validity of the journal entry and order. It is clear that no useful purpose would be served by now ordering another hearing. Therefore the "Order Allowing Final Account of Administratrix, Determine Heirs, and Final Decree of Distribution and Discharge" should be corrected to provide that appellee convey her interest in the real estate situated in Maysville, Arkansas, to appellant.

Appellant finally contends that the trial court erred in distributing the estate under the order of January 30, 1973, rather than the laws of intestate succession in Oklahoma. This proposition has been dealt with in considering the validity of consent judgments. It is sufficient to state that under the decisions of Cobb v. Killingsworth, supra, and Martin v. Martin, supra, there appears no reason why all the heirs to an estate cannot, by a consent judgment, effect a valid distribution of the estate binding on all parties.

Accordingly I dissent and would vote to affirm the trial court's decision as modified by this opinion. If, as appellant alleges, there was fraud or coercion used to obtain the consent judgment of January 30, 1973, the proper vehicle to present this contention is a petition to vacate judgment under 12 O.S.1971 § 1033, not the procedure utilized here.