STEVENS EXPERT CLEANERS & DYERS, Inc.

v.

STEVENS.

No. 35562.

Supreme Court of Oklahoma.

Jan. 19, 1954.

Rehearing Denied March 9, 1954.

Application for Leave to File Second Petition for Rehearing Denied March 23, 1954.

John F. Eberle, Richard J. Spooner, Oklahoma City, for plaintiff in error.

McKinney & McKinney, Oklahoma City, for defendant in error.

DAVISON, Justice.

This is an appeal from the granting and entering of an order nunc pro tunc upon application of the original defendant, in a suit brought by Stevens Expert Cleaners and Dyers, Inc., as plaintiff, against E. O. Stevens, as defendant. The parties will be referred to as they appeared in the trial court.

By its petition, plaintiff sought a permanent injunction against the defendant. On June 9, 1950, after a full and complete hearing and trial of the issues, the trial court rendered judgment for plaintiff. The parties were unable to agree on a journal entry of said judgment and each prepared, presented and extensively argued a suggested one. The trial court, on October 28, 1950, made and entered, as a judgment, the journal entry submitted by the attorney for defendant, which except for formal parts, is as follows:

"This cause coming on for hearing the 9th day of June, 1950, before Honorable W. A. Carlile, Judge of the District Court in and for Oklahoma County, State of Oklahoma, and plaintiff being present by John F. Eberle, Attorney, and the defendant by Harry Priest, Attorney, the court proceeded to hear evidence and argument in this cause and the court having carefully considered and weighed the evidence adduced and the argument and being fully advised in the premises, finds and adjudges that the plaintiff is entitled to the relief prayed for; and,

"It Is, Therefore, Ordered and Adjudged, that the plaintiff is granted a permanent and perpetual injunction against the said defendant, and the said defendant, his servants, agents and employees and all persons acting in combination and concert with said defendant, are hereby forever restrained and barred from the use of the name 'Stevens' in soliciting business for or in advertising the cleaning business being operated at 5401 North Western Avenue, Oklahoma City, Oklahoma, or any other cleaning and dyeing businesses now or hereafter operated by the said defendant, and that the defendant is particularly restrained from placing the name of 'Stevens,' 'E. O. Stevens,' or 'Stevens and Son' on and about his said place of business or upon the show windows thereof in such place or manner that same is by reason thereof used to advertise the operation of a cleaning business and from in any manner misleading the public into believing that the plaintiff, the Stevens Expert Cleaners and Dyers, Inc., has taken up its location at 5401 North Western Avenue or that the cleaning business at the said last named address has any connection or succession to the said Stevens Expert Cleaners and Dyers, Incorporated.

"That the said defendant and all acting by, with and under him, or in combination and concert with him are further perpetually enjoined and restrained, for the purpose of securing business, from using the said names of 'Stevens,' 'E. O. Stevens,' or 'Stevens and Son,' or any other use of the name of 'Stevens' in connection with the cleaning and dyeing business in listings, directories, telephone directories, or in advertising in any manner and from in any manner using the words 'Stevens',

'E. O. Stevens', or 'Stevens and Son,' or from otherwise using the name 'Stevens' in conjunction with the words 'cleaners and/or dyers' or any similar designation of the said word of 'Stevens' in connection with any designation of the said word of the cleaning business, whether upon signs, placards, handbills, advertisements, listings, or representations in any manner whatsoever for the purpose of securing business.

"That said injunction shall include not only the said E. O. Stevens, defendant herein, but all persons acting as his servants, agents, and employees, and all persons acting in combination and in concert with the said defendant.

"It is further ordered that the defendant pay the costs of this action.

"And the defendant having duly filed his Motion for New Trial herein which was overruled by the court on June 16, 1950, and an exception given to the defendant, said defendant thereupon gave notice in open court of his intention to appeal to the Supreme Court of the State of Oklahoma, and the Court thereupon granted the defendant thirty (30) days addition to the regular time for making and serving case-made, the plaintiff being given three (3) days to suggest amendments and the same to be settled on three (3) days' notice, and appeal bond being fixed in the amount of Two Hundred and Fifty ($250.00) Dollars.

"Dated this 9th day of June, 1950."

Several steps were taken in proceedings to appeal therefrom but the appeal was not perfected and the judgment became final. Thereafter, defendant employed a different attorney, who filed, on May 1, 1951, an "Application for Order Nunc Pro Tunc and Motion to Modify." That motion was amended and, on January 28, 1952, after application for, and denial of, a writ of prohibition from this court, the trial court made an "Order Nunc Pro Tunc," the material portion of which is as follows:

"It is therefore, ordered, adjudged and decreed that the Journal Entry dated the 9th day of June, 1950, be corrected as follows:

"At the end of the second paragraph, on page 2 of the Journal Entry, right after the word, 'Business,' this sentence:

"Provided that nothing herein shall preclude the defendant, E. O. Stevens, from stating under the name Whitehouse Cleaners and Dyers that he E. O. Stevens, or E. O. Stevens and Son, are the owners of said business; but in no case shall he state by advertisement or otherwise, that he is the same E. O. Stevens who was formerly connected with the Stevens Expert Cleaners and Dyers."

■ From that order, this appeal has been perfected. The defendant, to support the action of the trial court in the rendition of the order nunc pro tunc, has devoted much of his argument to the merits of the original case. There is no rule of procedure which permits such review in this appeal. The only issue properly before this court is whether or not the trial court had authority to enter, nunc pro tunc, on January 28, 1952, an amended and modified judgment supplementing and changing the judgment of June 9, 1950, from which no appeal was taken. That judgment whether proper or not became final. The term of court at which it was rendered has long since expired. If the journal entry (filed October 28, 1950) did not reflect the details of the judgment as rendered, it could be amended nunc pro tunc at any subsequent term, and, as so corrected, it then was final as of the original date of rendition of the judgment. If the journal entry reflected the actual judgment rendered (with or without correction nunc pro tunc) it makes no difference at this late date how erroneous that judgment was. It could be vacated, modified, or changed only in the manner provided by statute, 12 O.S.1951 § 1031 et seq.

■ Therefore, we cannot be here concerned with what judgment in the case would have been proper. The only question we now have jurisdiction to determine is as to what judgment the trial court actually rendered. To hold otherwise would be, in

effect, saying to all litigants—Although you have allowed years to elapse since judgment was rendered against you from which you did not appeal, we will allow you to present your case here as on appeal, provided the trial court will render a judgment nunc pro tunc. That is not the law in any jurisdiction. A judgment of a trial court, unappealed from, is cloaked with such finality and solemnity, after the term of court at which it was rendered, that it can be changed in no way, except as permitted, and in the manner provided, by statute.

The rule is stated in 30 Am.Jur. 876, "Judgments", § 109, as follows:

" * * * the office of entering and the power to enter, a judgment nunc pro tunc are restricted to placing upon the record evidence of judicial action which has actually been taken, and that the correction of the record of a judgment by amendment and the entry of such amendment nunc pro tunc presuppose a judgment actually rendered at the proper time. Under the rule, the amendment or nunc pro tunc entry may not be made to supply a judicial omission or an error of the court, or to show what the court might or should have decided, or intended to decide, as distinguished from what it actually did decide. The authority of the court in this connection does not extend beyond the power to make the journal entry speak the truth, and may be exercised only to supply omissions in the exercises of functions which are clerical merely."

In different words, the same rule is stated in the following authorities: 10 A.L.R. 553–554; Oregon Mtg. Co. v. Kuneke, 76 Mont. 117, 245 P. 539; Gardner v. State, 21 Ala.App. 388, 108 So. 635; Takekawa v. Hole, 170 Cal. 323, 149 P. 593; McKannay v. McKannay, 68 Cal.App. 709, 230 P. 218. This court has, on several occasions, followed the line of reasoning contained in these citations. Particularly applicable to the case at bar, are the statements in the cases of Great American Ins. Co. v. Keswater, 131 Okl. 196, 268 P. 258, and Guy v. Guy, 50 Okl. 233, 150 P. 1058.

More recently, in the case of Harder v. Woodside, 196 Okl. 449, 165 P.2d 841, 843, the following language was used:

" * * * As said in McCornack v. Fleming, 70 Okl. 50, 172 P. 952, a trial court cannot at a subsequent term vacate, set aside, or modify a final order for mere errors of law that were subject to review. * * *"

Quoting from the earlier case of Marker v. Gillam, 80 Okl. 259, 196 P. 126, it was said, in the case of Mabry v. Baird, 203 Okl. 212, 219 P.2d 234, 239, that:

" * * * 'A nunc pro tunc entry is one made now of something which was actually previously done, to have effect as of the former date. Its office is not to supply omitted action by the court, but to supply an omission (on the record of an action) really had, but omitted through inadvertence or mistake.' "

and, in the syllabus to the later case, the rule was stated, as follows:

"While a trial court, by order nunc pro tunc, may correct the record of a judgment theretofore rendered in order that such record shall truly reflect such judgment, it may not by such order render another and different judgment, nor adjudicate property rights which were not involved in the former judgment."

Turning now to the facts in the instant case, the record does not disclose that the journal entry of the judgment of June 9, 1950, was in any way different from the judgment rendered at the time. That there were errors of law in the judgment, cannot be raised in an application for an order nunc pro tunc. The record contains several statements made by the trial court at the time the order nunc pro tunc was made. They are of importance, and, for that reason, some of them are quoted, as follows:

"By the court: * * * I am of the honest opinion that my judgment is partly void. That is the way I feel about it. I think that I made the mistake. I don't charge the lawyers with

it, or anybody else. I just think I just exceeded my jurisdiction. * * *"

"By Mr. Eberle: Do I understand Your Honor to state that you make a mistake in law?

"By the court: Yes, sir. I think my judgment is absolutely void, insofar as it prohibits him from using his own name, showing that he owns the business.

"By the court: I have gone outside my jurisdiction in this case. I don't think Harry Priest was to blame. I take all the blame, myself. I think I am the one that made the error. John Eberle is not to blame. I just simply think I went beyond my jurisdiction. I have no right to deprive this man of his name, provided that he does not advertise it in such a way as to confuse the public."

\*    \*    \*    \*    \*    \*

"By the court: When an application for a writ of prohibition was made I reviewed this entire record. I read it all. I reached the conclusion that I did not intend to render a judgment so as to deprive E. O. Stevens of his name. I made a statement, at one hearing, that was purely a mistake of law. I reviewed the entire record and I reached the conclusion that I had made a mistake of both law and fact. I reviewed the record carefully. I wanted to be sure that what I was filing in the Supreme Court spoke the truth."

From these remarks and from the absence of any proof to the contrary in the record, it is apparent that the order nunc pro tunc was not made to supply or correct clerical errors, but was made solely to correct judicial errors and omissions. If the judgment was erroneous in any of the particulars enumerated in the statutes, 12 O.S. 1951 § 1031 et seq., there existed a statutory method to effect its correction. It could not be done after the term by order nunc pro tunc, under any established rule of law.

Because several opinions from various jurisdictions, including our own, have been rather loosely worded, there seems to be some confusion regarding two points. One of these is the distinction between the jurisdiction of a trial court to amend, modify, or vacate a former judgment under terms of the statute and its jurisdiction to correct the record of a former judgment by order nunc pro tunc. The other point is the meaning of the word "intended" when referring to what judgment the trial court intended to render. The confusion on these points has resulted in the basis for part of the argument contained in the brief of defendant. Several cases therein cited have no application here because they dealt with the jurisdiction of the trial court under the terms of the statute and not with its inherent jurisdiction to correct errors by order nunc pro tunc.

As to the use of the word "intended," the citations above point out that a trial court cannot by order nunc pro tunc modify or amend a former judgment to make it the judgment he *intended to render* but did not. But, the court can, by such order, correct the journal entry so that the words have the *meaning intended*, in that they reflect the judgment actually rendered or pronounced. This reasoning is in line with that contained in the opinion in the case of Hawks v. McCormack, 180 Okl. 569, 71 P.2d 724, 725. It is therein explained in the following manner:

"But the true function of a nunc pro tunc order is to make the record speak the truth relative to the judgment or order. That is to make the record reflect the true judgment or order intended by the court at the time the original judgment or order was entered. If the clerk makes a mistake or incorrectly enters a judgment or order, the same may be corrected by an order nunc pro tunc. If the court itself by inadvertence uses language in the journal entry which does not reflect the true judgment or order intended, an order may be made nunc pro tunc correcting same. * * *"

Therefore, the power to make corrections extends only to clerical errors (whether made by the clerk or the judge) and not to the correction of judicial errors. The remarks of the trial judge, as above

quoted, conclusively show that, in the case at bar, the nunc pro tunc order was made for the purpose of correcting judicial errors or errors of law and that the court had no jurisdiction to make the order complained of.

The judgment is reversed.

HALLEY, C. J., and CORN, O'NEAL, BLACKBIRD, JJ., concur.

ARNOLD, J., concurs in conclusion.

JOHNSON, V. C. J., and WILLIAMS, J., dissent.