Nancy Neal **DICKASON**, Appellant,

v.

L. King **Dickason**, Jr., Appellee.

No. 51793.

Supreme Court of Oklahoma.

Feb. 19, 1980.

---

11. *Shankle Equipment Company, Inc. v. Liberty National Bank & Trust Company of Oklahoma City,* 569 P.2d 965 (Okl.1977).

Doerner, Stuart, Saunders, Daniel & Langenkamp by Sam P. Daniel, Jr., Tulsa, for appellant.

Maynard I. Ungerman, John B. Wimbish, Tulsa, for appellee.

OPALA, Justice:

A statute enacted in 1967 made a divorce-related support-alimony award terminable by force of law on the death or remarriage of the obligee.[1] The issue presented by this

---

1. Okl.Sess.L.1967, Ch. 328, § 1; 12 O.S.Supp. 1967 § 1289(B). In its present version 12 O.S. Supp.1979 § 1289(B) provides in pertinent part: " * * * Upon the death of the recipient, the payments for support, if not already accrued, shall terminate, but the payments pertaining to a division of property shall continue until completed; and the decree shall so specify. The payments pertaining to a division of property shall be irrevocable. Upon the presentation of proper proof of death of such recipient, the court shall order the judgment for the payment of support to be terminated, and the lien thereof released unless a proper claim shall be made for any amount of past due support payments by any executor, administrator or heir within ninety (90) days from the date of death of the recipient. The court shall also provide in the divorce decree that any such payment of support shall terminate after remarriage of the recipient, unless the recipient can make a proper showing that some amount of support is still needed and that circumstances have not rendered payment of the same inequitable. Pro-

appeal is: If the pre-suit spousal agreement as to the amount of support-alimony and the court decree based thereon on both silent with respect to the statutorily-imposed terminability features that attach to an award by force of 12 O.S.Supp.1979 § 1289(B),[2] may the obligee, after more than two years from the time the decree was rendered, secure its modification on being permitted to show by testimony extrinsic to the judgment roll, that the parties, when entering into their contract, did not intend the alimony obligation to become terminable upon the statutory contingencies?

We hold the trial court was correct in ruling that the consent decree in suit could not be modified after the applicable time limits of 12 O.S.1971 § 1038 for modifying or vacating a judgment had run. Since the judgment roll in this case utterly fails to disclose that the parties did intend the alimony not to be subject to abridgement upon the contingencies provided in 1289(B), the statutorily-imposed attributes of terminability must be applied to the decree before us.

In contemplation of divorce the litigants herein reached an agreement adjusting their rights in property, alimony and child custody. So far as pertinent, the agreement provided that the wife [obligee] be awarded a judgment for "alimony in the nature of support in the amount of $34,-000.00 to be paid at the rate of $575.00 per month for a period of sixty months." There was no provision in the contract expressly protecting the agreed-upon alimony award from becoming terminable on death or remarriage of the obligee. Obligee brought a divorce suit and obligor waived appearance and notice. While the decree, rendered June 25, 1975, recites that it is based upon, and incorporates, the terms of the spouses' pre-suit agreement, it is utterly silent on the effect of § 1289(B) upon the efficacy of the contractually stipulated ali-

mony obligation beyond either of the two statutory contingencies.

Obligee remarried July 7, 1977. Alimony payments ceased the following month. On October 14, 1977, more than 90 days after her remarriage, and more than two years after the divorce, obligee brought the instant post-decree proceeding by application "for payment of alimony and to reduce arrearage to judgment." In this instrument she sought to have the decree modified on the basis of her averment that by the parties' agreement her alimony award was intended not to be subject to abridgement upon the happening of remarriage. Obligor defended by invoking the provisions of § 1289(B) as being applicable to the award. He sought an order declaring his former wife's right to payments terminated as a matter of law. The trial court rejected obligee's offer to show, by proof extrinsic to the judgment roll, [a] an intent of the contracting parties not to be bound, in case of remarriage, by the legal consequences of § 1289(B) and [b] that her consent to the terms of the pre-suit agreement, later incorporated in the decree, had been secured by fraud, overreaching or misrepresentation. From an order denying her relief and terminating obligor's alimony liability, obligee prosecutes this appeal.

Inasmuch as obligee's "application" was filed below more than 90 days after her remarriage and more than two years following the divorce, counsel for obligee was invited, at oral argument, to characterize the instant post-judgment proceeding in terms of the statutory remedy that was being invoked. Counsel replied generally the obligee's purpose was to have the decree "construed" in light of her pre-suit agreement. He declined to place the proceeding in a more precise procedural posture.

■ The terms of a judgment actually pronounced but inadvertently omitted from its written memorial by scrivener's error may be supplied nunc pro tunc at any time

---

vided however, that unless the recipient shall commence an action for such determination within ninety (90) days of the date of such remarriage, the court shall, upon proper appli-

cation, order the payment of support terminated and the lien thereof discharged."

**2.** Okl.Sess.L.1979, Ch. 278, § 1.

to make the record "speak the truth".[3] A judgment whose terms exclude some essential elements of the bargain upon which it was based may be subject either to vacation or modification under the provisions of 12 O.S.1971 § 1031.[4] Unless void on the face of the judgment roll, *no* judgment may, however, be modified or vacated pursuant to 12 O.S.1971 § 1031 et seq. if proceedings for relief thereunder were instituted after the applicable periods of limitations prescribed therefor in 12 O.S.1971 § 1038 had expired.[5] Post-judgment proceedings for relief from fraud must be brought within two years after judgment was rendered.[6]

The obligee's application clearly did not state grounds for a nunc pro tunc amendment of the decree. Nor did she bring herself within the purview of 12 O.S.1971 § 1031, subdiv. 4, which authorizes vacation or modification on grounds of fraud practiced upon her. For this relief her application, filed more than two years after the decree, came too late. Lastly, she was also tardy for relief by judicial extension of alimony liability beyond remarriage on the basis of need. The terms of § 1289(B) prescribe a 90-day period during which alimony termination on remarriage may be avoided.

Neither may obligee secure the relief she seeks by characterizing this proceeding as one to construe a prior judgment. The judgment roll presents no ambiguity to be construed.

A pre-divorce property settlement agreement is not enforceable absent its affirmative approval by the court. Once incorporated in full or in part by judicial approval, the parties' contract merges into the decree to the extent that its terms are embodied therein. When a spousal agreement is approved and is hence incorporated in the decree, the rights which the parties have thereunder merge into that decree. The agreement is then extinguished by force of law. The rights cease to be contractual. They come to be governed and become enforceable as a judgment.[7]

An intent to modify applicable law by contract is not effective unless the power is expressly exercised. There is no rule of law that makes a contract-based divorce decree [a] per se free from legal incidents ordinarily attachable to the class of judgments into which it falls or [b] impervious to the law which generally governs the class of obligations comprised within it. To escape the incidence of general law, the agreement or decree must not be silent as to the parties' intent *vis-à-vis* the law that applies to them.[8]

Only if a judgment is ambiguous on the face of the record may the court "construe" it. In so doing the court stands confined to the inspection of the judgment roll.[9] It cannot extend its inquiry beyond the instruments that comprise it. The judgment roll in this case is neither ambiguous nor self-contradictory. The law does not hold to the view that [a] *all* spouses who

**3.** *Mabry v. Baird*, 203 Okl. 212, 219 P.2d 234, 239–240 [1950]; *Stevens Expert Cleaners & Dyers v. Stevens*, Okl., 267 P.2d 998, 1001–1002 [1954].

**4.** *Key v. Key*, Okl., 388 P.2d 505, 510–511 [1964].

**5.** *Fisher v. Fisher*, Okl., 558 P.2d 391, 392–393 [1976].

**6.** In *Eaton v. Allen*, Okl., 362 P.2d 93 [1961] the court held that dismissal of an action "with prejudice" based on mutual consent, is binding only to the extent contemplated by the parties' agreement. Any doubts as to the intended effect of the dismissal as a bar to future litigation may be resolved by "extrinsic evidence". In authorizing a post-dismissal proceeding to as-

say a dismissal's effect *Eaton* does not create any conflict with the restraints of § 1031, as construed together with § 1038. See *Amos v. Johnston*, infra note 10.

**7.** *Acker v. Acker*, Okl., 594 P.2d 1216, 1219 [1979].

**8.** *Acker v. Acker*, supra note 7.

**9.** The meaning of a judgment is to be divined from the terms expressed in the instrument as construed with other parts of the judgment roll. *Filtsch v. Sipe*, 198 Okl. 356, 178 P.2d 612, 615 [1947]; *Knight v. Armstrong*, Okl., 303 P.2d 421, 424 [1956]; *Long v. Drumright*, Okl., 375 P.2d 953, 957 [1962].

enter into an agreement for the amount of divorce-related support-alimony are conclusively presumed to intend that their obligation be clothed with attributes of nonterminability on obligee's remarriage and that [b] trial judges fall short of fulfilling their duty of canvassing matrimonial litigants' agreements proffered to them for approval in order to excise from them any provisions deemed either unfair or otherwise unacceptable on grounds of public policy.

The decree in the instant case had been judicially canvassed and approved *as fair*. It is not ambiguous on its face. Absence of contractual terms contrary to the terminability provisions of § 1289(B) cannot itself operate to make a consent decree either legally deficient, doubtful or unfair. Offending ambiguity must be shown by some inconsistency on the face of the record. The infirmity of the alleged omission, which the obligee invokes, lies *dehors* the record proper. After two years it can no longer be availed of as a basis for modification because of overreaching or misrepresentation.[10]

Neither the agreement between the litigants in this case nor the decree based thereon embodies any indication of spousal intent, communicated to the judge, to make support-alimony extend beyond remarriage. The judgment roll likewise fails to reflect a consent decree that rests on an antecedent agreement which seeks to avoid the strictures of § 1289(B). It is too late now to make a new agreement or to modify the old one on the basis of evidence extrinsic to the record proper.

Trial court's order denying relief to the obligee must be affirmed.

All Justices concur.

10. *Amos v. Johnston*, 162 Okl. 115, 19 P.2d 344, 346 [1933]; *Boettcher Oil & Gas Co. v. West-moland*, 189 Okl. 110, 113 P.2d 824, 825 [1941]; *Eaton v. Allen*, supra note 6.