Barbara B. STORK, Plaintiff–Appellant,

v.

Walter J. STORK, Jr., Defendant–
Appellee.

No. 82680.

Supreme Court of Oklahoma.

June 13, 1995.

As Corrected June 14, 1995.

Debbra J. Gottschalk, Tulsa, for appellant.

Richard T. Garren, Riggs, Abney, Neal, Turpen, Orbison & Lewis, Tulsa, for appellee.

OPALA, Justice.

This certiorari presses for our decision two issues: (1) Did the trial court err in refusing to correct *nunc pro tunc* the divorce decree's stated date for the commencement of support alimony payments? and (2) Is the plaintiff entitled to a counsel-fee award and litigation expenses incurred in this appeal? We answer both questions in the negative.

# I

## THE ANATOMY OF LITIGATION

Walter and Barbara Stork [husband and wife] were divorced by consent decree entered on November 27, 1979, which was *first signed by the parties and their counsel* and then submitted to the trial judge for his approval. According to its terms, the husband was ordered to pay support alimony in the amount of $900 a month for a total of $135,900, *with payments to commence June 15, 1979.* At the time the decree was entered the husband was paying temporary alimony (of $400 a month), the obligation directed by an earlier *pendente lite* order of April 5, 1979.

On March 11, 1992, *some 12 years later,* the wife moved to *modify* the divorce decree's support alimony award by invoking the provisions of 43 O.S.1991 § 134(E),[1] which

---

1. The pertinent terms of 43 O.S.1991 § 134 are: "* * * E. Except as otherwise provided in subsection D of this section, the provisions of any divorce decree pertaining to the payment of alimony as support may be modified upon proof of changed circumstances relating to the need for support or ability to support which are substantial and continuing so as to make the terms of the decree unreasonable to either party. *Only those installments accruing subse-*

authorize modification of *unaccrued alimony* installments. She pressed for an *increase* in and *continuation* of her alimony payments "for a period of time to be set by the trial judge." She also sought to commute certain unpaid accrued support alimony to judgment (for the period covering December 1991 through February 1992) and to secure a counsel-fee award and costs for legal services to be rendered in that proceeding. The husband moved to *dismiss* the wife's March 11, 1992 modification quest, arguing that (a) she had failed to allege that there *were* unaccrued alimony installments and (b) her quest was untimely because the last alimony installment *had accrued* December 15, 1991.[2]

The wife filed an *amended motion*,[3] pressing the court for *nunc pro tunc* "correction" of the divorce decree which would postpone the date the alimony payments were to begin and make the final alimony installment fall due *after* the filing of her March 11, 1992 motion to modify. This change, she urged, *would reflect the parties' intent* that payment of the support alimony obligation was to commence on December 15, 1979, one month

after the consent decree was entered, *instead of June 15, 1979, the date stated in the decree.* She alleged that the decree was drafted for *anticipated entry* in June, but because the parties had failed finally to agree on the total amount of permanent alimony until early November 1979,[4] the divorce decree was not *entered* until later that month (on November 27, 1979). According to the wife, the June 15, 1979 commencement date in the decree is a *"typographical error"* that should be corrected by a *nunc pro tunc* order. The amended motion *does not press for either arrearages of any unpaid accrued support alimony or counsel fees for services rendered* in the case. *We cannot tell from this record whether the wife had abandoned her demand for these items. If she has not, the issues, if not already resolved, would remain pending below.* The husband advanced several challenges of his own in the answer to the wife's plea.[5]

The husband next moved for summary denial of the wife's amended motion. He argued that (a) the relief sought constitutes an *untimely delayed attack* on the judgment,

---

quent to the motion for modification may be modified.

\* \* \* \* \* \*

G. The provisions of subsections D and E of this section *shall have retrospective* and prospective *application* with regards to modifications of the provisions of a final judgment or order for alimony as support, or of a divorce decree pertaining to the payment of alimony as support, *regardless of the date that the order, judgment, or decree was entered."* (Emphasis added.)

2. The decree, which was signed by a judge *different from one* whose name appears as the trial judge in this *post-decree contest,* states that the alimony installments are to commence June 15, 1979 and continue until the sum of $135,900 (or 151 months of alimony) has been paid.

3. The wife's amended motion (filed July 17, 1992) is entitled: "Plaintiff's amendment to comply with court's order of July 6, 1992". It was apparently her response to the July 6, 1992 dismissal of her first motion, which had given her 10 days to replead. The appellate record contains *no* memorialization of the July 6, 1992 ruling; it shows up only as an entry on the appearance docket. While neither the appearance docket sheets nor minutes unsigned by the judge can be accepted by a reviewing court as a proper substitute for the judge's memorialized entry of judgment, orders or of any proceedings occurring at *nisi prius,* the appearance docket may serve as an authoritative source for ascer-

taining the omission of an instrument from the appellate record. *Martin v. Lib. Nat. Bank & Trust,* Okl., 839 P.2d 179, 179–180 (1992); *Hulsey v. Mid–America Preferred Ins. Co.,* Okl., 777 P.2d 932, 935 n. 5 (1989); *Little v. Employer's Casualty Co.,* 180 Okl. 628, 71 P.2d 687, 687–688 (1937).

4. The originally drafted consent decree had shown $108,000 for support alimony; this amount was increased to $135,900 some time in early November 1979. The parties initialed the change on the decree before its submission to trial judge for approval.

5. Among the defenses pressed in the husband's answer are: (a) the wife failed to state a claim upon which relief can be granted; (b) she is estopped from pressing her claim for scrivener's error because she knew in 1979 the alimony payments were to begin at a time *"inconsistent with the parties' intent"*; (c) laches operates to bar this proceeding by the wife for her failure timely to correct the alleged scrivener's error; (d) the husband has paid all the support alimony required by the divorce decree; (e) the wife's claim is unenforceable under the Statute of Frauds; (f) the wife's attempt to modify the parties' written agreement is contrary to law; (g) her modification quest is an impermissible collateral attack upon a valid judgment; and (h) the district court is without authority to modify the divorce decree.

(b) the wife's attempt to correct a mistake is subject to the statutory time bar for modification of judgments, and (c) a *nunc pro tunc* entry *is not available to correct something which was not done.* The wife countered that the term *nunc pro tunc* is used in Oklahoma jurisprudence interchangeably with *reformation* and that equity's principles which govern *reformation of an agreement* are equally applicable to a proceeding for *nunc pro tunc* correction. According to the wife, the divorce decree represents the parties' agreement *except for the date that alimony payments were to commence.* She urged that the date should be *reformed* either to correct a mutual mistake of the parties or on the ground of the husband's inequitable conduct. She asserted she is entitled to adduce evidence in support of her request that the alimony award be modified.

The trial court denied the wife's March 11, 1992 quest, ruling that (a) the last alimony installment due *under the decree* had accrued in December 1991 *before* her modification plea was filed; (b) the wife's *quest* for an order *nunc pro tunc* (or reformation of the agreement) *was in effect a request to modify the decree;* (c) because the case addresses a divorce decree rather than a contract or deed, the *reformation* jurisprudence advanced by the wife is inapposite as well as factually distinguishable; (d) the wife's rights ceased to be contractual and merged into the decree; and (e) *there are no disputed fact issues relevant to the wife's quest for nunc pro tunc correction of the decree.*

On denial of her new-trial motion,[6] the wife appealed. She argued that (a) the trial court erred in giving summary relief to the husband because material fact issues in dispute were left undetermined, and (b) a *nunc pro tunc* correction is an appropriate and available remedy in domestic relations cases. The husband countered that the wife misinterpreted the trial court's ruling and is attempting to modify or reform a decree in a manner contrary to law. He urged that because the change sought to be made in the decree does not address judicial action that "actually occurred but was not correctly recorded," the wife is not entitled to the *nunc pro tunc* relief she seeks.

The Court of Appeals reversed and remanded the cause for a hearing on the wife's quest for *nunc pro tunc* correction. The appellate court held that summary relief was inappropriate because there was a *fact question* whether the record supports a plea for *nunc pro tunc* correction. We granted certiorari on the husband's petition and now, for the reasons to be explained, vacate the Court of Appeals' opinion and affirm the trial court's post-decree refusal to correct the divorce decree *nunc pro tunc.*

## II

### THE *NUNC PRO TUNC* RELIEF SOUGHT BY THE WIFE

Orders *nunc pro tunc* are designed neither to bring into the record what a court *might or should have done* nor what it *might or should have intended to do.* The function of a *nunc pro tunc* entry is to amend a judgment to make it *speak the truth about what actually transpired* or *was considered and adjudged.*[7] *Nunc pro tunc* relief is limited to supplying *inadvertent clerical omission* and correcting *facial mistakes* in re-

6. According to the wife's new-trial motion, (a) the trial court erroneously ruled that a *nunc pro tunc* entry is an inappropriate remedy in domestic relations cases; (b) the law makes no distinction between domestic relations and contract cases for granting *nunc pro tunc* relief; and (c) since this "matter involves an issue of pure law and not one of fact, an affidavit in support of [her] motion would be superfluous."

7. *Federal Nat. Bank & Trust Co. v. Dillard,* Okl., 830 P.2d 1374, 1375 (1992), quoting *Hawks v. McCormack,* 180 Okl. 569, 71 P.2d 724, 725 (1937); *Hadnot v. Shaw,* Okl., 826 P.2d 978, 982 n. 11 (1992); *Glasgow v. Fox,* Okl., 757 P.2d 836, 838 (1988); *Chandler v. Denton,* Okl., 747 P.2d 938, 941 (1988); *Hair v. Oklahoma Corp. Com'n,* Okl., 740 P.2d 134, 141 (1987); *Application of Okla. Nat. Gas Co.,* Okl., 715 P.2d 477, 478 (1986); *McCullough v. Safeway Stores, Inc.,* Okl., 626 P.2d 1332, 1334 (1981); *Dickason v. Dickason,* Okl., 607 P.2d 674, 676–677 (1980); *Stevens Expert Cleaners & Dyers v. Stevens,* Okl., 267 P.2d 998, 1001–1002 (1954); *Mabry v. Baird,* 203 Okl. 212, 219 P.2d 234, 239–240 (1950); *Woodmansee v. Woodmansee,* 137 Okl. 112, 278 P. 278 (1929); *Marker v. Gillam,* 80 Okl. 259, 196 P. 126 (1921). *See also Mullins v. Ward,* Okl., 712 P.2d 55, 60 n. 9 (1985).

cording judicial acts that actually took place.[8] In short, a *nunc pro tunc* order *can and will* place of record what was *actually decided* by the court *but was incorrectly recorded.* The device may neither be invoked as a vehicle to review a judgment (or to excise legal errors found in it) nor as a means to enter a different judgment.[9]

The wife's quest for a *nunc pro tunc* correction of the divorce decree is to make it *reflect the parties' intent* that the alimony installments would begin December 15, 1979 (the first month after the divorce), rather than June 15, 1979 (the date stated in the decree). The divorce decree—which had been prepared by the wife's lawyer, *was signed by the parties and their counsel* and then submitted for the trial judge's approval—apparently failed to embody this element of their agreement. *The wife concedes that she knew the date was wrong when she signed the decree and mailed it to her counsel.* She *assumed* that either her lawyer or the trial judge would correct the date. It is *undisputed* that a copy of the decree was mailed to her shortly after its entry.

■ This appeal clearly does *not* present a case of *clerical omission in the judgment actually given.* The trial judge signed the

agreed document presented to him for approval, which had been prepared by the wife's lawyer and bore the signatures of both parties and their counsel. He *changed only* the date appearing in the first line of the text (from June 8, 1979 to November 27, 1979) to reflect the time the cause came before him for adjudication.[10] The recorded decree speaks the truth as to what was *actually decided* on November 27, 1979. We hence hold that the wife clearly advanced *no* legally tenable grounds for *nunc pro tunc* relief from a decree clause that could be regarded as incorrectly reflecting an actual adjudication.

### The Wife's Quest Does Not Fall Within The Purview Of 12 O.S.1991 § 1031[11]

■ A judgment whose terms *exclude some essential elements of the bargain upon which it was based* may be subject either to vacation or modification under the provisions of 12 O.S.1991 § 1031.[12] Unless void upon the face of the judgment roll, no judgment may be *modified* or *vacated* under the provisions of 12 O.S.1991 §§ 1031 et seq. if proceedings for this relief are brought *after* expiration of the applicable time limits prescribed by 12 O.S.1991 §§ 1032 and 1038.[13] If evidence is needed to show lack of some

---

8. A facial miscalculation is one that appears from the four corners of the decision. *Ferguson v. Ferguson Motor Company,* Okl., 766 P.2d 335, 337 n. 5 (1988); *Chandler, supra* note 7 at 941; *Application of Okla. Nat. Gas Co., supra* note 7 at 478; *Dickason, supra* note 7 at 677; *Fowler v. Zimmerman,* Okl., 383 P.2d 682, 685 (1963); *Stanka Construction Company v. Yates,* Okl., 359 P.2d 729, 730–731 (1961); *Stevens, supra* note 7 at 1001; *City of Shawnee v. Kinnamon,* 207 Okl. 299, 249 P.2d 417–418 (1952); *Mabry, supra* note 7 at 239–240; *Co–Wok–Ochee v. Chapman,* 76 Okl. 1, 183 P. 610 syl. 1 (1919).

9. *Chandler, supra* note 7 at 941; *Application of Okla. Nat. Gas Co., supra* note 7 at 478. *See also Pettit v. Arkansas Louisiana Gas Co.,* Okl., 595 P.2d 793 (1979); *Hawkins v. Hurst,* Okl., 467 P.2d 159 (1970); *Jones v. Jones,* Okl., 442 P.2d 319 (1968); *Fowler, supra* note 8 at 685; *Humphrey Oil Corp. v. Lindsey,* Okl., 370 P.2d 296 (1961); *Vitale v. Dunnett,* Okl., 365 P.2d 122 (1961); *Oklahoma Turnpike Authority v. Kitchen,* Okl., 337 P.2d 1081 (1959); *Stevens, supra* note 7 at 1001; *In re Peter's Estate,* 175 Okl. 90, 51 P.2d 272 (1935).

10. Although the first two paragraphs in the divorce decree state that there was a trial on the

merits, *the parties concede they merely signed the consent decree and then submitted it to the trial judge for approval.* Admissions made in the briefs may be considered as supplementing and curing an otherwise deficient appellate record. *Reeves v. Agee,* Okl., 769 P.2d 745, 753 (1989); *Womack v. City of Oklahoma City,* Okl., 726 P.2d 1178, 1181 (1986); *Timmons v. Royal Globe Ins. Co.,* Okl., 713 P.2d 589, 592 (1985); *Norris v. Norris,* Okl., 695 P.2d 506, 507 (1984); *Greenwood v. Lyles & Buckner, Inc.,* Okl., 329 P.2d 1063, 1067 (1958); *Ramer v. State,* Okl., 302 P.2d 139, 140 (1956).

11. For the pertinent terms of 12 O.S.1991 § 1031, see *infra* note 15.

12. *Dickason, supra* note 7 at 677; *Key v. Key,* Okl., 388 P.2d 505, 510–511 (1964). For the pertinent terms of 12 O.S.1991 § 1031, see *infra* note 15.

13. For the pertinent terms of §§ 1032 and 1038, see *infra* note 16. *Dickason, supra* note 7 at 677; *Fisher v. Fisher,* Okl., 558 P.2d 391, 392–393 (1976).

jurisdictional element, a three-year time bar applies.[14]

The husband argues that the wife's plea presents nothing more than an untimely § 1031[15] quest to modify the terms of the decree. The wife counters that she does not seek to change the terms of their agreement but merely to make the decree reflect the pre-decree intent of the parties. Even if the wife's claim could be treated as one for a § 1031 modification on ground of mutual mistake, *this* post-decree quest would be untimely. *Her motion,* filed more than 12 years after the decree, *came too late* either under the § 1038 or § 1032 time bars.[16]

### The Decree is Not Void for Want of Jurisdiction

 When absence of jurisdiction appears on the face of the judgment roll, the judgment is void and subject to attack at any time.[17] If extrinsic evidence is needed to show the jurisdiction's absence, the judgment is not facially invalid, although it may be declared voidable.[18] When the authority to deal with a subject does exist, the manner and extent of the power's exercise, even if patently excessive, must stand undisturbed, absent a timely direct attack.[19]

 The wife argues that the trial court *has no jurisdiction* to order a support alimony obligation to commence at a point of time *anterior* to the decree's entry. This argument is utterly without merit. In a divorce case in which the trial court clearly has cognizance (a) over the subject matter (support alimony) and (b) over the parties, it also has (c) the power to set the amount of permanent alimony. Even if the trial court

---

14. *Hough v. Hough,* Okl., 772 P.2d 920, 921 (1989); *Scoufos v. Fuller,* Okl., 280 P.2d 720, 723 (1955).

15. The pertinent terms of 12 O.S.1991 § 1031(3) are:

"The district court shall have power to vacate or modify its own judgments or orders within the times prescribed hereafter: * * *

Third. For mistake, neglect or omission of the clerk or irregularity in obtaining a judgment or order."

16. The version of § 1032 in effect when the divorce decree was rendered (12 O.S.1971 § 1032) provided:

"The proceedings to correct mistakes or omissions of the clerk, or irregularity in obtaining a judgment or order, shall be by motion, upon reasonable notice to the adverse party or his attorney in the action. The motion to vacate a judgment because of its rendition before the action regularly stood for trial can be made only within three (3) months after the rendition of said judgment."

The presently effective version, 12 O.S.Supp. 1993 § 1032, provides:

"The proceedings to correct mistakes or omissions of the clerk, or irregularity in obtaining a judgment or order, shall be by motion, upon reasonable notice to the adverse party or his attorney in the action."

The version of § 1038 in effect when the divorce decree was rendered (12 O.S.1971 § 1038) provided:

" * * * Proceedings [to vacate or modify a judgment or order] for the causes mentioned in subdivisions three and six of the same section, shall be [commenced] within three (3) years [after the judgment was rendered or order made].... A void judgment may be vacat-

ed at any time, on motion of a party, or any person affected thereby."

The presently effective version, 12 O.S.Supp. 1993 § 1038, provides in pertinent part:

" * * * Proceedings [to vacate or modify a judgment, decree or order] for the causes mentioned in paragraphs 3 and 6 of Section 1031 of this title, shall be within three (3) years.... A void judgment, decree or order may be vacated at any time, on motion of a party, or any person affected thereby." (Emphasis added.)

17. *See* 12 O.S.1991 § 1038, *supra* note 16. The trial court's decision is deemed void only when the face of the record reveals that at least one of the three elements of jurisdiction was absent, i.e., jurisdiction over the parties, jurisdiction over the subject matter or jurisdictional power to pronounce the particular decision that was entered. *Messenger v. Messenger,* Okl., 827 P.2d 865, 870 n. 21 (1992); *Heiman v. Atlantic Richfield Co.,* Okl., 807 P.2d 257, 260 (1991); *Capitol Federal Savings Bank v. Bewley,* Okl., 795 P.2d 1051, 1054 (1990); *Hough, supra* note 14 at 921; *Mayhue v. Mayhue,* Okl., 706 P.2d 890, 893 n. 8 (1985); *Scoufos, supra* note 14 at 723; *State ex rel. Commissioners of Land Office v. Keller,* Okl., 264 P.2d 742, 747–748 (1953).

18. *Scoufos, supra* note 14 at 723; *Hough, supra* note 14 at 921.

19. Jurisdiction is not wanting but merely exceeded when judicial authority is exercised erroneously. Neither legal error nor an excessive exercise of cognizance operates to render a judicial act facially void and vulnerable to collateral attack. *Mayhue, supra* note 17 at 893; *Woodrow v. Ewing,* Okl., 263 P.2d 167, 171 (1953).

had *erred* by making the date for commencing permanent alimony payments *anterior* to the decree's entry, the decree would not be void but at most merely voidable.[20] The power of a court to adjudicate includes the authority to decide wrongly.[21] Until set aside or corrected in a manner authorized by law, an *erroneous decision* is as binding as one that is correct.[22]

### The Construction Of A Decree

■ The wife argues the divorce decree is unclear on its face in that it purports to afford a retroactive remedy. She directs us to those decree provisions which require permanent support alimony to commence *before* the date of the decree's entry. These provisions, she urges, are in conflict and cannot be read together.

■ Once a judgment has become final for want of an appeal or in consequence of an appellate court's decision, any controversy over the meaning and effect of that judgment must be resolved *by resorting solely to the face of the judgment roll.*[23] The meaning of a judgment is to be divined from the terms expressed in its text, which is to be construed with the other parts of the judgment roll.[24] Only if a judgment is ambiguous on the face of the record proper may the

court *reach it for construction.* When called upon to so do, the court stands confined to an inspection of the judgment roll. It cannot extend its inquiry *dehors* the instruments that comprise the roll.[25]

We hold that the wife may not secure the relief she seeks by characterizing this proceeding as one *to construe an earlier judgment.* The judgment roll presents no ambiguity to be construed.[26] The consent decree explicitly awards $135,900 in support alimony, payable in monthly installments of $900 (or a total of 151 payments), and declares that June 15, 1979 is the date the first support alimony installment is due.

### III

### THE WIFE'S APPEAL–RELATED COUNSEL–FEE QUEST

■ The wife claims *in this court* the sum of $2,571.57 in appeal-related attorney's fee and costs because she "is not in a position to bear the burden of the legal fees incurred."

■ In statutorily authorized litigation, counsel fees on appeal, much like taxable costs, may be allowed *in the case in which the services were performed.*[27] The

20. *Woodrow, supra* note 19 at 171.

21. *Mayhue, supra* note 17 at 893 n. 7.

22. *Mayhue, supra* note 17 at 893 n. 7; *Woodrow, supra note 19* at 171.

23. The legal effect of a finally adjudicated case is measured by the four corners of its judgment roll. *Dyke v. Saint Francis Hosp., Inc.,* Okl., 861 P.2d 295, 303 n. 27 (1993); *Willard v. Kelley,* Okl., 803 P.2d 1124, 1134 n. 32 (1990); *Chandler, supra* note 7 at 941; *Reeves, supra* note 10 at 752; *Mayhue, supra* note 17 at 895; *Timmons, supra* note 10 at 592.

24. *Elliott v. City of Guthrie,* Okl., 725 P.2d 861, 863 (1986); *Timmons, supra* note 10 at 592; *Dickason, supra* note 7 at 677; *Long v. Drumright,* Okl., 375 P.2d 953, 957 (1962); *Knight v. Armstrong,* Okl., 303 P.2d 421, 424 (1956); *Filtsch v. Sipe,* 198 Okl. 356, 178 P.2d 612, 615 (1947).

25. *Timmons, supra* note 10 at 591 n. 5, quoting 12 O.S.1981 § 32.1 (renumbered in 1972 from

12 O.S.1971 § 704 in Okl.Sess.L.1972, Ch. 119, § 5) which provides in pertinent part:

"The record [synonymous with 'record proper' and 'judgment roll'] shall be made up from the petition, the process, return, the pleadings subsequent thereto, reports, verdicts, orders, judgments, and all material acts and proceedings of the court...."

See also *Mayhue, supra* note 17 at 895 n. 17; *Veiser v. Armstrong,* Okl., 688 P.2d 796, 800 (1984); *Short v. Hale,* Okl., 400 P.2d 816 (1965); *Peerson v. Mitchell,* 205 Okl. 530, 239 P.2d 1028 (1951); *Mid–Continent Pipe Line Co. v. Seminole County Excise Bd.,* 194 Okl. 40, 146 P.2d 996, 1000 (1944); *Dime Savings and Trust Co. v. Able,* 185 Okl. 461, 94 P.2d 834 (1939).

26. *Elliott, supra* note 24 at 863; *Timmons, supra* note 10 at 592; *Dickason, supra* note 7 at 677.

27. The terms of 43 O.S.Supp.1992 § 110, which is the applicable statute in force when the issue came up, provide in pertinent part:

" * * * C. Upon granting a decree of divorce or separate maintenance, the court may require either party to pay such reasonable ex-

terms of 43 O.S.Supp.1992 § 110 [28] provide that *either spouse* may be required to pay "reasonable expenses of the other as may be just and proper under the circumstances." Counsel-fee allowances claimed in matrimonial disputes under § 110 *never depend* on one's status as prevailing party in the case, but *may* be granted *only* to that litigant who qualifies for the added benefit by the mandated process of *judicial balancing of the equities.*[29] *Moreover, counsel fee may be the appellee's due when the appeal is found to be "without merit".*[30] *This appeal is neither frivolous nor lacking merit.*

Based on our review of the record, there are *no* compelling or overriding equitable considerations in favor of either litigant. We hence hold that each party shall bear its own counsel-fee and other litigation expenses incurred in the appeal or certiorari process of this post-decree proceeding for nunc pro tunc modification.

## IV

## CONCLUSION

*Nunc pro tunc* relief may be available to place of record what was *actually adjudicated* but *incorrectly recorded.* The power of a court to correct its records to make them speak the truth is not lost by any lapse of time prescribed by statute.[31] The wife's request to change, in this case, an allegedly erroneous date in the consent decree and replace it with one which had been

intended by the parties is clearly beyond the trial judge's power to correct *nunc pro tunc.* A divorce decree entered some 12 years ago—neither void upon the face of the judgment roll nor shown to be tainted by still remediable fraud—is not within the purview of the § 1031 modification relief. Neither does the decree in contest present ambiguity that may be construed by resort to the face of the judgment roll. Each party must bear its own counsel-fee and other litigation expenses incurred in the appeal and certiorari process.

ON CERTIORARI PREVIOUSLY GRANTED, THE COURT OF APPEALS' OPINION IS VACATED AND THE TRIAL COURT'S POST-DECREE REFUSAL "TO CORRECT" THE DIVORCE DECREE *NUNC PRO TUNC* IS AFFIRMED.

ALMA WILSON, C.J., KAUGER, V.C.J., and HODGES, LAVENDER, SIMMS, HARGRAVE and WATT, JJ., concur.

SUMMERS, J., concurs in part and dissents in part.

penses of the other as may be just and proper under the circumstances.

D. The court may in its discretion make additional orders relative to the expenses of any such subsequent actions ... brought by the parties or their attorneys, for the enforcement or modification of any interlocutory or final orders in the divorce action made for the benefit of either party or their respective attorneys."

Rule 1.31(a)(5), Rules on Perfecting a Civil Appeal, 12 O.S.1991, Ch. 15, App. 2, provides in pertinent part:

"(a) For the purposes to be stated the trial court does retain jurisdiction in the case after a petition-in-error has been filed in this court.

٭ * * * * *

(5) In matrimonial litigation, to award attorney fees for services rendered or to be rendered in connection with the appeal.... *Jones v. Jones,* Okl., 612 P.2d 266 [1980]. * * * "

*Thielenhaus v. Thielenhaus,* Okl., 890 P.2d 925, 934–935 (1995); *Chamberlin v. Chamberlin,* Okl., 720 P.2d 721, 727–728 (1986).

**28.** For the pertinent terms of 43 O.S.Supp.1992 § 110, see *supra* note 27.

**29.** *Thielenhaus, supra* note 27 at 935; *Chamberlin, supra* note 27 at 727; *Harmon v. Harmon,* Okl., 770 P.2d 1, 4 (1988); *Carpenter v. Carpenter,* Okl., 657 P.2d 646, 653 (1983); *Gardner v. Gardner,* Okl.App., 629 P.2d 1283, 1286–1288 (1981); *Phillips v. Phillips,* Okl., 556 P.2d 607, 610 (1976).

**30.** 20 O.S.1991 § 15.1; *TRW/Reda Pump v. Brewington,* Okl., 829 P.2d 15, 20–22 (1992).

**31.** *Lamb v. Alexander,* 74 Okl. 250, 179 P. 587 (1919); *Hawks v. McCormack,* 180 Okl. 569, 71 P.2d 724 (1937); *Cartwright v. Atlas Chemical Industries, Inc.,* Okl., 623 P.2d 606, 610 (1981). *See in this connection* an explanation of the common law's immemorial prescription in *Marian P.*

---

*Opala, Praescriptio Temporis* and Its Relation to Prescriptive Easements in the Anglo–American Law, 7 Tulsa L.J. 107, 111 (1971).