OSCN Found Document:BRADY v. BRADY

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 BRADY v. BRADY
2014 OK CIV APP 76
Case Number: 111498
Decided: 08/29/2014
Mandate Issued: 09/23/2014
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2014 OK CIV APP 76, __ P.3d __

IN RE THE MARRIAGE OF MICHAEL H. BRADY AND PATTI W. BRADY:

MICHAEL H. BRADY, By and Through His Personal Representative and Substituted Party, LYNN MIKAWA BRADY, Petitioner/Appellee,
v.
PATTI W. BRADY, Respondent/Appellant.

APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY, OKLAHOMA

HONORABLE LISA K. HAMMOND, JUDGE

AFFIRMED

Michael L. Mullins, Ryan J. Reaves, Mullins Martinez Sexton & Reaves, Oklahoma City, Oklahoma, for Petitioner/Appellee,
Conner L. Helms, Erin M. Moore, Helms & Underwood, Oklahoma City, Oklahoma, for Respondent/Appellant.

Bay Mitchell, Judge:

¶1 Respondent/Appellant Patti W. Brady (Wife) appeals the trial court's order granting the Motion to Correct Decree Nunc Pro Tunc filed on behalf of Michael H. Brady (Husband). The Decree of Dissolution of Marriage ("Decree") was entered June 27, 2011, and the Agreement Incident to Dissolution of Marriage ("Agreement"), incorporated by reference into the Decree, was signed by Wife and Husband June 24, 2011. The Agreement awarded residential property located at 4700 Doral Court, Oklahoma City, Oklahoma ("Doral Court property") to Wife using the following terms:

PROPERTY AWARDED TO WIFE

Residence and contents of the home located at 4700 Doral Court, Oklahoma City, Oklahoma, more particularly described as:

[legal description],

subject to any indebtedness thereon which Husband shall assume and exonerate and hold Wife harmless therefrom.

¶2 Husband married Lynn Mikawa Brady ("Widow") sometime after the Decree was entered. Husband later died August 19, 2012. Widow served as the Personal Representative of Husband's probate estate and was substituted in place of Husband for purposes of the Motion to Correct Decree Nunc Pro Tunc.[1] The record shows Wife paid the mortgage payments on the Doral Court property for at least sixteen months from the date the Decree was entered before filing a creditor's claim in Husband's pending probate action requesting the balance of the mortgage on the Doral Court property ($149,892.13) be paid by Husband's estate.[2] As a result of the creditor's claim filed by Wife, Widow sought to have the Agreement corrected through a nunc pro tunc order changing the last phrase in the paragraph discussing the Doral Court property to read as follows: "subject to any indebtedness thereon which Wife shall assume and exonerate and hold Husband harmless therefrom." (Emphasis added.)

¶3 Widow claimed this correction reflected the true intention and agreement of Husband and Wife regarding the Doral Court property. To support her contention, Widow referenced the written settlement negotiations between Husband and Wife which were included as exhibits attached to Husband's previously filed Motion to Enforce Settlement Agreement and Widow's Motion to Correct Decree Nunc Pro Tunc. Widow argued the written settlement negotiations made clear it was never the parties' intentions for Husband to pay the mortgage on the Doral Court property. Husband opened the settlement negotiations with an offer to Wife that she would "receive the [Doral Court property] free and clear of any claim on the part of [Husband] and subject to any indebtedness relating thereto, which she shall assume, exonerate, and hold [Husband] harmless therefrom." Widow argued, while several written counter-offers were exchanged between Husband and Wife regarding the property settlement, no change was ever made or requested regarding the Doral Court property. Widow contended the last clause of the signed Agreement appeared as written due to a simple error of cutting and pasting language, which occurred throughout the Agreement, without changing which party was responsible for the debt.[3] Widow also argued the Agreement itself was ambiguous which required the trial court to construe the offending language. Specifically, Widow argued the last two phrases of the paragraph made it unclear whether Wife was awarded the property "subject to any indebtedness thereon" or whether the subsequent phrase required Husband to assume the debt and hold Wife harmless.

¶4 Wife objected to the Motion to Correct Decree Nunc Pro Tunc on the grounds the change requested was a "substantive" change not available through a nunc pro tunc order. Wife argued switching the locations of "Husband" and "Wife" in the last phrase materially altered the property settlement. Wife maintained the requested change was an improper extra-jurisdictional modification to a property settlement contained in a divorce decree from which no appeal had been taken. After a hearing in front of the trial court, of which no transcription was made, an Order Granting Correction Nunc Pro Tunc was entered where the trial court specifically found "clerical errors" caused the Agreement to "incorrectly record[] the agreement of the parties and failed to accurately reflect the intent of the parties in that it appears to place responsibility for payment of the mortgage on [Wife's] Doral Court home upon [Husband]." The trial court also found the case of Stork v. Stork, 1995 OK 61, 898 P.2d 732, relied on by Wife, to be factually distinguishable from the case at bar. In response, Wife filed her petition in error, and this appeal commenced. On appeal, Wife argues the trial court's ruling resulted in a "substantive" change in the divorce decree which is an inappropriate use of nunc pro tunc correction. Wife also argued the trial court erred in its interpretation of Stork.

¶5 At the outset, we recognize the Decree, through the incorporation of the Agreement by reference, purports to be both an Agreement between the parties as to the division of property and the trial court's equitable division of property after "having reviewed the pleadings on file . . . having reviewed the agreement of the parties, having heard presentations of counsel, testimony of [Husband] and being otherwise fully advised in the premises."

¶6 The Oklahoma Supreme Court has previously defined the function of an order nunc pro tunc.

The function of a nunc pro tunc entry is to amend a judgment to make it speak the truth about what actually transpired or was considered and adjudged. Nunc pro tunc relief is limited to supplying inadvertent clerical omission and correcting facial mistakes in recording judicial acts that actually took place. In short, a nunc pro tunc order can and will place of record what was actually decided by the court but was incorrectly recorded. The device may neither be invoked as a vehicle to review a judgment (or to excise legal errors found in it) nor as a means to enter a different judgments [sic]. Stork v. Stork, 1995 OK 61, ¶7, 898 P.2d 732 (footnotes omitted) (emphasis original).

"[T]he test is whether the mistake related to something the court did not consider and pass upon, or considered and erroneously decided, in which case the error would be a judicial error and not subject to correction, or whether there was a failure to preserve or correctly report in the record in all respects the actual decision of the court, in which event it would be a clerical error, and subject to correction." Youngblood v. Stephens, 1949 OK 57, ¶8, 205 P.2d 279. Orders nunc pro tunc should be granted when the evidence "conclusively" shows the original judgment sought to be corrected did not reflect the true judgment rendered by the court. Id. at ¶10; Feagin v. Fife, 1946 OK 324, ¶19, 175 P.2d 81.

¶7 We find no support for Wife's argument nunc pro tunc orders cannot substantively change a previous ruling. "[T]he true function of a nunc pro tunc order is to make the record speak the truth relative to the judgment or order," Youngblood, 1949 OK 57, ¶9 (internal citations omitted), which could certainly encompass a substantive change. In the case at bar, after reviewing Widow's Motion to Correct Decree Nunc Pro Tunc and Wife's response thereto and also hearing the arguments of counsel, the trial court found the last sentence in the paragraph discussing the Doral Court property contained a "clerical error[]" when it transposed "Husband" and "Wife" such that it appeared Husband was responsible for the debt on the property. The trial court stated the intent of the parties and the ruling of the court was actually that Wife was responsible for the debt. After our review of the record on appeal, we conclude it was not error for the trial court to make such a ruling, especially in light of the history of this case before the trial court.[4] In particular, we note Husband had previously filed a Motion to Enforce Settlement Agreement making the trial court aware of the particulars of the Agreement between the parties. It is also undisputed Wife paid the mortgage payments on the Doral Court property for some sixteen months after the Decree was entered. In fact, everything in the record on appeal supports the trial court's conclusion that the error being corrected was clerical rather than judicial. "Error may not be predicated on silence; it must be affirmatively demonstrated." Davidson v. Gregory, 1989 OK 87, ¶12, 780 P.2d 679.

¶8 Further, we agree with the trial court the facts of Stork are distinguishable from this matter. In Stork, the Supreme Court affirmed the trial court's decision to refuse the wife's request for a nunc pro tunc order which would have changed the divorce decree's stated date for the commencement of support alimony payments. Stork, 1995 OK 61, ¶1, ¶¶8-9. The record in that case revealed the alleged error was not "a case of clerical omission in the judgment actually given." Id. at ¶8. The wife, who requested the nunc pro tunc order, conceded she knew when she signed the decree it did not state the accurate commencement date of support alimony payments but assumed the trial judge or her lawyer would correct it. Id. Unlike the Decree in this case, the decree signed by the trial judge in Stork "sp[oke] the truth about what was actually decided . . . ." Id. at ¶9.

¶9 The situation presented in the case at bar is analogous to the situation in Youngblood v. Stephens where the journal entry of judgment used "west" instead of "east" in the legal description of the property at issue. Youngblood, 1949 OK 57, ¶4. The party opposing the nunc pro tunc order in that case argued the mistake was a "judicial one" not susceptible to change via nunc pro tunc, but the trial court, after a full review of the trial record and hearing the arguments of counsel, concluded the record showed the trial court's ruling was based on the legal description using "east" and entered a nunc pro tunc order to correct the clerical error. Id. at ¶¶5-6. The Supreme Court affirmed the trial court's order because "it conclusively appear[ed] that the journal entry of judgment did not reflect the true judgment rendered by the court." Id. at ¶10.

¶10 On the record before us, it is apparent the parties' Agreement, upon which the trial court's ruling was based, contemplated Wife was responsible for the debt on the Doral Court property. The trial court's entry of an order nunc pro tunc merely directed the Decree and written Agreement reflect this reality. The decision of the trial court is AFFIRMED.

BELL, P.J., and GOREE, J., concur.

FOOTNOTES

[1] Although Wife objected to the substitution of Widow as Husband's personal representative, such substitution is not at issue on appeal.

[2] The creditor's claim also alleged Husband owed Wife $10,000 in unpaid support alimony.

[3] Indeed, the same language which appears in the clause awarding the Doral Court property, see paragraph 1, supra, is repeated throughout the Agreement. Husband was awarded another of the parties' residential properties, and the exact same language appears except "Husband" and "Wife" are presumably in the correct locations as Husband was awarded the property "subject to the indebtedness thereon which Husband shall assume and exonerate and hold Wife harmless therefrom."

[4] The parties to this appeal took considerable time and effort arguing whether Widow's "Reply in Support of Motion to Correct Decree Nunc Pro Tunc" and "Reply in Support of Motion for Substitution of Personal Representative" were properly included in the record on appeal. First, we note the trial court specifically stated these replies were not relied upon in its ruling. Second, as stated in the Supreme Court order entered April 11, 2013, disputes over the correctness of materials to be included in the record on appeal which have not yet been transmitted to the Supreme Court are to be resolved by the trial court. Okla. Sup. Ct. R. 1.32(a). In this case, the trial court denied Wife's motion to strike these replies from the record on appeal. Wife did not appeal that ruling, so the replies were properly included in the record on appeal. While the replies were reviewed as a part of the record on appeal, this Court was also aware of the lack of consideration given to them by the trial court. Additionally, nothing contained in those pleadings was necessary to affirm the ruling of the trial court.






 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Supreme Court Cases Cite
Name
Level 1989 OK 87, 780 P.2d 679, 60 OBJ 1464, Davidson v. Gregory
Discussed 1946 OK 324, 175 P.2d 81, 198 Okla. 57, FEAGIN v. FIFE
Discussed 1995 OK 61, 898 P.2d 732, 66 OBJ 1982, Stork v. Stork
Discussed at Length 1949 OK 57, 205 P.2d 279, 201 Okla. 301, YOUNGBLOOD v. STEPHENS
Discussed at Length